United States Court of Appeals,

Eleventh Circuit.

No. 96-8116.

Arthur L. CROWE, Jr., Edith Crowe Ingram, Eleanor Ingram Kiefling, Plaintiffs-Appellants,

v.

Daniel COLEMAN, Crown Central Petroleum Corporation, Crown Stations, Inc., Defendants-Appellees.

May 21, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-CV-2669-CAM), Charles A. Moye, Judge.

Before EDMONDSON and BLACK, Circuit Judges, and RONEY, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Plaintiffs-Appellants appeal from the district court's denial of their motion for remand to the Superior Court of Cobb County, Georgia and from the grant of summary judgment for Defendant Daniel Coleman. Because the district court erred in concluding that Plaintiffs could maintain no possible cause of action against Georgia-resident Defendant Coleman, we reverse the district court's denial of Plaintiff's motion for remand. Because the case must be returned to state court, we vacate the award of summary judgment.

I. *Background*

Plaintiffs are Arthur Crowe, Jr., Edith Crowe and Eleanor Ingram Kiefling. Together they own a parcel of land in Georgia. Plaintiffs filed suit in the Superior Court of Cobb County against Defendants Crown Stations, Inc. ("Crown"), a subsidiary of Crown Central Petroleum Corporation, and Daniel Coleman. Jurisdiction in state court was based on Coleman, who is a Georgia resident. *See* O.C.G.A. § 9-10-30. In their complaint, Plaintiffs alleged that Coleman, as the current owner of the land adjoining Plaintiffs' property, and Crown, as the former owner, were liable for damages caused to Plaintiffs by the escape of gasoline from Defendants' property onto Plaintiffs' property. Defendant Coleman was served with a copy of the complaint on September 29, 1995.

On October 20, Defendants filed a notice of removal of the case to the District Court for the

Northern District of Georgia; Defendants alleged that Georgia-resident Defendant Coleman had been fraudulently joined to defeat diversity jurisdiction. On November 13, Defendant Coleman submitted a motion for summary judgment, claiming that he did not cause Plaintiffs' harm. In support of this motion, Coleman submitted his own affidavit and the affidavit of a Crown engineer. These affidavits said that, although Crown formerly operated a service station on the land adjacent to Plaintiffs' property and stored petroleum in underground storage tanks (USTs), those USTs were removed from the ground before Coleman became the owner of the property. Coleman swore in his affidavit that, during his ownership, he "never caused the release of any petroleum products at the S. Atlanta Rd. property [that is, his own land]."

Also on November 13, Plaintiffs moved for remand to state court, arguing that they stated a valid claim for continuing nuisance against Coleman under Georgia law. Defendants responded by contending that Plaintiffs' complaint only alleged a cause of action for trespass and, if a nuisance had been alleged, that Plaintiffs could succeed on no nuisance claim against Coleman. On November 30, Plaintiffs moved to amend their complaint to state expressly a cause of action for nuisance. On January 11, 1996, the district court issued an order (1) denying Plaintiffs' motion to remand to state court, concluding there was no possibility Plaintiffs could establish a cause of action against Coleman; (2) denying Plaintiffs' motion to amend the complaint as futile; and (3) granting Defendant Coleman's motion for summary judgment.

II. *Discussion*

A. *The Law of Remand*

In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989). The burden of the removing party is a "heavy one." *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. Unit A 1981).

To determine whether the case should be remanded, the district court must evaluate the

factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff. *Id.* at 549. The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties. *Id.*

While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)," *id.* at n. 9, the jurisdictional inquiry "must not subsume substantive determination." *Id.* at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." *Id.* at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440-41 (11th Cir.1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir.1993).

This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.,* 308 F.2d 474, 478 (5th Cir.1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.,* 507 F.Supp. 740, 744 (S.D.Ga.1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated.

B. *The Parties' Arguments*

Plaintiffs argue that removal of this case was improper and that remand is required, because

Plaintiffs have stated a valid nuisance claim against Defendant Coleman.[1] Defendants make two arguments challenging Plaintiffs' nuisance claim. First, Defendants argue that Plaintiffs' complaint at the time of removal only stated a claim for trespass and did not expressly state a claim for nuisance. Second, Defendants argue that, even if Plaintiffs' complaint otherwise stated a cause of action for nuisance, no possibility exists that Plaintiffs can establish a nuisance claim against Coleman under Georgia law.

1. *Adequacy of Plaintiffs' Pleading for Nuisance Claim*

Plaintiffs' complaint in this case was a verified one, that is, under oath in respect to the facts. The complaint says, among other things:

8.

The defendants have allowed the escape of gasoline from their property onto the property of the plaintiffs.

9.

The actions of the defendants in allowing gasoline to escape from their property and to travel onto the property of the plaintiffs is a trespass for which damages may be awarded and which should be permanently enjoined.

. . . . .

12.

The plaintiffs have made demands upon the defendants to remove from the property of the defendants the gasoline that they have allowed to trespass and contaminate the plaintiffs' property and which *continues to do so.* The defendants' failure to so remove the gasoline and accompanying contamination prevents the property of the plaintiffs from being salable. (emphasis added).

When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually. We also note that, under the liberal requirements of notice pleading, "[n]o technical forms of pleading ... are required." *See* Fed.R.Civ.P. 8(a); O.C.G.A. § 9-11-8(a)(2)(A).

The word "trespass," although it can mean a specific form of tort action, can also mean "a

---

[1] Although Plaintiffs' complaint alleged a trespass claim against all Defendants, including Coleman, Plaintiffs acknowledge that they have no trespass claim against Coleman under Georgia law because Coleman did not cause the petroleum to be released onto his property. So, Plaintiffs' argument for remand relies solely on the nuisance claim.

wrongful entry upon the lands of another" or an "encroachment or intrusion." *The Random House Dictionary of the English Language* 2016 (2d ed. 1987). So, although Plaintiffs' unamended complaint—including paragraph 12—might be capable of more than one meaning, the complaint can easily be read to be a sworn statement that Coleman has allowed gasoline from his land to intrude wrongfully (and to continue to intrude) on Plaintiffs' property and to contaminate Plaintiffs' land. Once more, a plaintiff seeking to have his case remanded to state court is to be given the benefit of every reasonable inference in his favor.

2. *Nuisance Claim Under Georgia Law*

We now must decide whether the facts alleged in Plaintiffs' complaint state even an *arguable* cause of action under Georgia law. The answer is "yes."

Defendants contend that Georgia law creates no cause of action against a landowner for the failure to abate a continuing nuisance caused by his property where the landowner did not create the nuisance: again, no one claims that Coleman caused gasoline to spill onto his land. And, Georgia case law may be in conflict on this issue. But, at this point in the procedural history of the case—that is, on a motion for remand, our analysis (as well as the district court's) must be limited to determining whether Plaintiffs have even an arguable claim. So, any ambiguity or doubt about the substantive state law favors remand to state court.

Section 41-1-5(a) of the Georgia Code provides: "The alienee of a person owning property injured may maintain an action for continuance of the nuisance for which the alienee of the property causing the nuisance is responsible." The statute provides no guidance about whether an alienee, such as Coleman, may be held responsible for a nuisance where he engaged in no act—in this case, the storage of petroleum—which initially caused the nuisance if he, after notice, refuses to abate the continuing nuisance: in this case, petroleum seeping from his land onto adjoining land. The parties point to no Georgia Supreme Court case that has decided the issue.[2]

---

[2]In their brief, Defendants cite the Georgia Supreme Court case of *Cox v. Cambridge Square Towne Houses Inc.,* 239 Ga. 127, 236 S.E.2d 73 (1977), for the proposition that "a defendant must engage in some act or operation which continues a nuisance in order to be liable." In *Cox,* the plaintiff sued the owner of adjoining property; the defendant had installed the storm sewer that was the subject of the nuisance claim. *Cox* did not involve a suit against an alienee who

Each party relies on a Georgia Court of Appeals case to support its argument. Defendants point to *Citizens & Southern Trust Co. v. Phillips Petroleum Co.,* 192 Ga.App. 499, 385 S.E.2d 426, 428 (1989), where the court rejected the plaintiffs' nuisance claim against the subsequent owner of adjoining property when that adjoining property was already contaminated and its subsequent owner did not contribute to the contamination. Plaintiffs point to *Hoffman v. Atlanta Gas Light Co.,* 206 Ga.App. 727, 426 S.E.2d 387, 391 (1992), where the court permitted a nuisance claim where the defendant did not cause the initial contamination of the defendant's land, but where the preexisting contamination of the defendant's land continued to migrate onto the plaintiffs' property.

On the face of these opinions, there appears to be a conflict on this issue in the Georgia appellate decisions. Defendants, and Judge Roney in his dissent, point to factors which might distinguish this case from *Hoffman.*[3] If this case were properly before the district court (and this court) under original diversity jurisdiction, we would be obligated to predict how the Georgia Supreme Court would rule on this issue or to certify the question to the Georgia Supreme Court. For purposes of determining whether this case should be remanded to state court, however, the inquiry by federal judges must not go so far:

> This is an *Erie* problem in part, but only part. In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is.... But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable and is not fraudulent in fact or in law.

*Bobby Jones Garden Apartments v. Suleski,* 391 F.2d 172, 176-77 (5th Cir.1968) (citations omitted). In this case, the arguable confusion in Georgia law itself supports remanding this case to state court. *See Parks,* 308 F.2d at 477 (noting in fraudulent joinder case that, "doubtful issues of law due to absence of definite pronouncements by the state supreme court are to be tried in the court having

owned property after the creation of the nuisance; so the court did not decide the issue.

[3]We do not reject the proposed distinctions. We accept that they may possibly be appropriate; but, more important, we do not see them as doubtlessly correct either. For example, *Hoffman* never seems to reply completely on some contract concept to support the cause of action allowed in that case: a nuisance claim against the property owner who created no contamination, but whose property was the source of the contamination of his neighbors'—the plaintiffs—land.

original jurisdiction of the case and are not to be determined in a removal proceeding.").

In the present case, neither the words of Plaintiffs' verified complaint nor—as we will discuss more—the remainder of the record before the district court forecloses the possibility that petroleum, which had already leaked onto Defendants' property from the removed tanks, has continued to seep onto Plaintiffs' property during Coleman's ownership of the former service station site. Unlike the complaint, Defendant Coleman's answer is not under oath; but he denies wrongdoing. His denial, of course, does nothing to undercut the fact that plaintiffs have set out an arguable nuisance claim against him; the answer, at most, shows a controversy that needs to be resolved.

3. *Defendants' Affidavits*

Defendants also submitted affidavits which say that—before Coleman's ownership of the former service station site—the USTs were removed from the ground, and no petroleum products have been since stored or sold at the property. In addition, Coleman specifically says in his affidavit: "I have never caused the release of any petroleum products *at* [Defendants'] property." (emphasis added).

Coleman submitted the affidavits in support of his motion for summary judgment before the district court ruled on Plaintiffs' motion for remand. Although submitted in support of a motion for summary judgment, Defendants' affidavits were probably properly considered by the district court on the question of remand; and we too will take them into account in deciding the limited question of whether a possibility exists that Plaintiffs have stated a nuisance cause of action against Coleman. *See Cabalceta,* 883 F.2d at 1561.

Seemingly on the basis of Defendants' affidavits[4], the district court found and concluded it to be undisputed that: "Since at least May 14, 1991, there have been ... no petroleum releases *from*

---

[4]Based on the docket entries, we suppose that a hearing at which the parties were allowed to argue was held on the motions in the district court. We know that, when motions are orally argued (even when the pertinent hearing is for argument only and not one for the presentation of evidence), important things sometimes happen which impact on the factual record—for example, the judge while interrogating the lawyers obtains stipulations, concessions, and so on. But in this case, no one has said the oral argument in district court amended the paper record. And the transcript of the hearing in the district court is not part of the appellate record. So, we believe we are looking at the same factual record that was before the district court.

the site" (emphasis added). If "release," as used by the district court, means no seepage or leakage onto Plaintiffs' land,[5] we cannot see how that fact can be said to be undisputed from the paper record before the district court and us. Coleman's affidavit and Plaintiffs' sworn complaint seem to leave open—as completely disputed—whether gasoline from Coleman's land (after he became the landowner) has intruded, and continues to intrude, onto Plaintiffs' land. By the way, we note that Plaintiffs—before the district court ruled on the summary judgment motion—filed, pursuant to the district court's local rules, a "Statement of Material Facts to Which There Remains a Genuine Issue to Be Tried," which included this statement: "Gasoline continues to leak from the contaminated property owned by Coleman onto the property of the Plaintiffs."

In the light of the ostensible dispute of fact appearing in the documents in the record—including those under oath—summary judgment for defendant Coleman was very possibly erroneous. But, as a reviewing court, we need not go so far as to say summary judgment was wrongfully entered. We can just say (and we do say with more certainty) that the motion for remand was improperly denied.

In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *B., Inc.,* 663 F.2d at 550 (quoting *Bobby Jones Garden Apartments,* 391 F.2d at 177) (emphasis added). Because the procedures are similar while the substantive standards are very

_____

[5]The district court might have used "release" to mean no release of gasoline onto the Defendants' own land. This fact is undisputed. The district court may then have gone on to conclude that Georgia law allows no cause of action against Coleman even if gasoline, which had been released into the soil at the service station site before Coleman owned it, had seeped onto Plaintiffs' land after Coleman bought the former service station site. This approach would be erroneous, because it would entail a decision about Georgia law when the state's precedents are not plainly consistent.

different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims. Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent. Applying these principals to this case, we conclude that the district court—given the record before it—should have remanded the case to state court and should have never addressed the motion for summary judgment.

4. *Oral Argument in the Appellate Court*

This case, however, presents one more question. In dissent, Judge Roney points out a statement made at oral argument in this court by Plaintiffs' counsel; Judge Roney concludes from the statement that Plaintiffs cannot in fact dispute that no gasoline has intruded onto Plaintiffs' land from Coleman's land since Coleman was the landowner. Therefore, we must answer this question: If the district court erred on the record before it, does this error become harmless given Plaintiffs' counsel's words to the appellate court?

The pertinent statement of Plaintiff-Appellants' counsel occurred during the rebuttal in the context of the following exchange:

> Judge Roney: "Is [the district court judge] correct or incorrect when he says, "The following facts are undisputed: There have been no petroleum releases from the site since May 14, 1991.' "
>
> Counsel: "He is correct that there has been no—that was the day the tanks were taken out. There could have been no new releases, but it is undisputed that the gasoline remains on ..."
>
> Judge Roney: "I'm not talking about that. I'm talking about whether any gasoline flowed from the property Mr. Coleman owned after he owned it?"[6]
>
> Counsel: "We could not prove one way or the other. So, I cannot technically say that the new flow since Coleman ran it is disputed."

---

[6]At this point, Judge Roney may be asking a question which is different from the one the district court addressed when the district court said, "[s]ince at least May 14, 1991 ... there have been no petroleum releases from the site." *See supra* note 5.

That concessions and admissions of counsel at oral argument in appellate courts can count against them is doubtlessly true. *See, e.g., Rozar v. Mullis,* 85 F.3d 556, 563 (11th Cir.1996); *United States v. Gerber,* 994 F.2d 1556, 1558 (11th Cir.1993). But waivers and concessions made in appellate oral arguments need to be unambiguous before they are allowed to change the outcome of an appeal from a reversal to an affirmance. *See Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir.1972) ("[T]o be binding, judicial admissions must be unequivocal.") In the context of the entire oral argument in this case and of Plaintiffs' briefs, we are unwilling to base the outcome of this case on a few words uttered in the last minute of Plaintiffs' counsel's rebuttal.

For example, earlier in the same oral argument, the following exchange occurred between Judge Roney and Appellants' counsel:

> Judge Roney: "Where is the evidence that there was any continued leaking after Coleman got the property?"
>
> Counsel: "There is evidence. It is alleged in the complaint ..."
>
> Judge Roney: "No. It is very diffuse."
>
> Counsel: "Here is the confusion. There is not the leakage from the tanks. The tanks are gone. But, there is gasoline on the adjoining property that, number one, continues to leak onto the ..." [counsel was interrupted]

At another point in the oral argument, Appellants' counsel spoke these words:

> Counsel: "[The defendants] did not claim or deny in the summary judgment that the gasoline continues to be there. Nobody denies that, because it is."
>
> Judge Roney: "Continues to be where?"
>
> Counsel: "In the ground."
>
> Judge Roney: "On your client's property?"
>
> Counsel: "On our client's property and on [the defendants'] property."

For other representations of plaintiff-appellants on the timing of the seepage of gasoline onto their land, see Appellant's Brief at page 13 (characterizing the continuing nuisance as "the exuding gasoline") and at page 15 ("the pollutants currently obtruding Plaintiffs' property represent the continuing nuisance"). See also Appellant's Reply Brief at page 6 ("The cause of action against Coleman stems, not from any involvement with the leaky USTs, but rather, from his passive

acquiescence of the continuing exudation of contamination from *his property* after failing his statutory duty to abate it upon Appellants' request.")  (emphasis in original).

Taken as a whole, we cannot say that Plaintiff-Appellants' counsel's statements about when gasoline has seeped onto his clients' land were so consistent, plain and favorable to Coleman as to make the district court's error, in the light of the record before it, harmless in reality.  Again, if there is ambiguity about what Plaintiffs' counsel has said, Plaintiffs are entitled to the construction most favorable to remand.

### III. *Conclusion*

If removal is doubtful, we remand the case.  Therefore, we send this case back to the district court to remand it to state court.[7]  In doing so, we express no view of the ultimate outcome on the merits.  Georgia's state courts—which have the final word on Georgia law—will decide all that.

SUMMARY JUDGMENT VACATED.

REVERSED and REMANDED.

RONEY, Senior Circuit Judge, dissenting:

I respectfully would affirm for the reasons set forth in Judge Moye's Order.

The reversal is based on the fact that there is "petroleum seeping from his [Coleman's] land onto adjoining land" and that "the preexisting contamination of the defendant's land continued to migrate onto the plaintiffs' property."  The majority opinion recites that "neither the words of Plaintiffs' complaint nor the remainder of the record foreclose the possibility that petroleum has continued to seep onto Plaintiffs' property during Coleman's ownership."

This is contrary to the record, the understanding of Judge Moye, and the admissions of counsel at oral argument.  Judge Moye recited as undisputed that since May 1991, prior to Coleman's ownership:  "There have been no petroleum releases from the site."  The parties do not dispute this fact on appeal.  When asked directly about the accuracy of this statement at oral argument, counsel for plaintiffs said:  "We could not prove one way or the other.  So I cannot

---

[7]Because we decide that the district court erred by denying Plaintiffs' motion for remand based on the unamended complaint, we do not address Plaintiffs' argument that the district court erred by refusing to allow Plaintiffs to amend their complaint.

technically say that the new flow since Coleman owned it is disputed." Therefore, the case presented to this Court is based on this undisputed critical paragraph in Judge Moye's opinion:

> Since at least May 14, 1991, there have been no deliveries of petroleum products to the former service station, there have been no petroleum products sold from the site, there have been no petroleum products stored at the site, and there have been no petroleum releases from the site.

On these undisputed facts, Georgia law is clear. If Coleman did not own the property or the offending tanks that caused the contamination, he cannot be held responsible for the fact that the contaminants remain on the plaintiffs' property. *Citizens & So. Trust v. Phillips Petro.,* 192 Ga.App. 499, 385 S.E.2d 426, 428 (1989) ("That there was no reoccurrence of a leak from the underground storage tanks after [defendants] purchased the property and relined the tanks is undisputed.... Accordingly, the trial court did not err in granting summary judgment in favor of the [defendants].").

To the extent that plaintiffs seek to read *Hoffman v. Atlanta Gas Light Co.,* 206 Ga.App. 727, 426 S.E.2d 387 (1992), to the contrary, they overlook the critical facts of that case. "Atlanta Gas Light now holds and controls the easement *and the pipeline* which are the physical source of the contamination.... We will not hold that the alienee of the easement *and pipeline* has no legal duty to abate a continuing nuisance, *particularly under the easement agreement in effect between Atlanta Gas Light and [the complaining landowners]." Id.* 426 S.E.2d at 391. (Emphasis added). In this case, Coleman never held, controlled or owned the tanks that caused the contamination, nor did he have any contractual relation with the complaining landowners.

Plaintiffs' argument is that they made a demand of Coleman to remove the contamination on their property and that his refusal to do so amounts to a continuing nuisance. There is no authority for the proposition that by demanding the removal of a nuisance by someone who has had nothing to do with the source or maintenance of it, or the things which caused it, can somehow create a cause of action against them for a "continuing" nuisance, which they have never had anything to do with in the first place.

Under the undisputed facts as presented to this Court on appeal, plaintiffs have no cause of action against Coleman, and the district court correctly so ruled.

I would affirm.