Harold **ACKER, A.J. Acker, David L. Acker as Trustee of the Harrold Acker 1999 Irrevocable Trust; Howard Gross as Trustee of the A.J. Acker 1999 Irrevocable Trust and the Harrold Acker 1999 Irrevocable Trust, Hait Investments, LLC and, Ajit Investments, LLC, Plaintiffs,**

v.

**AIG INTERNATIONAL, INC., BDO Seidman, L.L.P., Randy Frischer, Alan Frank, and Robert Greisman, Defendants.**

No. 05–22072CIV.

United States District Court, S.D. Florida.

Nov. 8, 2005.

David R. Deary, W. Ralph Canada, Jr., Stewart Clancy, Jeven R. Sloan, Deary Montgomery Defeo & Canada, L.L.P, Dallas, TX, Robert M. Graff, Wald Gonzalez & Graff, P.A., Miami, Joe R. Whatley, Jr., Othni Lathram, Whatley Drake, LLC, Craig P. Niedenthal, Ernest Cory, F. Jerome Tapley, Cory Watson Crowder & Degaris, Birmingham, AL, for Plaintiff.

Lori A. Sochin, Greenberg Traurig, P.A., Lewis F. Murphy, Wendy S. Leavitt, Squire Sanders & Dempsey L.L.P., Including Steel Hector & Davis LLP, Miami, Benjamin E. Rosenberg, Nicolle L. Jacoby, Dechert LLP, Lawrence O. Kamin, Sameer Advani, Anamika Samanta, Willkie Farr & Gallagher LLP, New York, NY, for Defendants.

### *ORDER*

MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Motion to Remand (DE # 8), and Plaintiffs' Brief in Support of Motion to Remand (DE # 9).

UPON CONSIDERATION of the Motion, and being otherwise fully advised in the premises, the Court enters the following Order.

### *Background*

This action arises out of a alleged tax strategy employed by AIG International, Inc., BDO Seidman, L.L.P., Randy Frischer, Alan Frank and Robert Greisman (collectively, "Defendants"). According to the Complaint, the tax strategy allowed a taxpayer to purchase and sell options and transfer these option positions to a partnership. Compl. at ¶ 18. This options trading strategy would result in a partnership interest being increased by the cost of the purchased options, but not being reduced by the taxpayer's obligation with

regard to the premium earned on the options sold. *Id.* ¶¶ 18, 48. In order to minimize the risk to the option holder, the option holder would take two opposing positions on the options: one where the client would be paid if the rate of a particular foreign currency was at or below a certain rate, and one where the client would have to "pay out" if the rate was at or below a certain rate. *Id.* at ¶ 19. The use of "European-style" options allowed the option purchaser to exercise the option only on a specific date (and sometimes, only at a specific time), as opposed to an American-style option, which requires the option holder to exercise the option at any time prior to a certain date. *Id.* at ¶ 15.

In the case at issue, the two opposing rates that were set were different by only fractions of a penny, virtually guaranteeing that either both positions or neither position would be acted upon. *Id.* at ¶ 19. Furthermore, the ability to choose the spot rate that determines if the trigger occurred at all was given to Defendant AIG International, Inc., According to the Plaintiffs, this further all but guaranteed that either both or neither of the paired transactions would be exercised. *Id.* at ¶ 20. This allegedly had the effect of "no reasonable possibility of a profit." *Id.* at ¶ 24. In addition, the Complaint alleges that those "marketing participants" who participated in the transaction by introducing and recommending the foreign currency option contracts collected fees between 5.5% and 9.5% of the tax savings that the client desired to achieve. *Id.* at ¶ 21.

Beginning in September 1999, the Plaintiffs committed to the "tax strategy" discussed above and entered into various foreign currency option contracts. *Id.* at ¶ 52. In December 1999, the IRS issued IRS Notice 1999–59, entitled "Tax Avoidance Using Distribution of Encumbered Property," allegedly sending the "clear message" to the Defendants that "purported losses arising from transactions wholly lacking in 'economic substance' are not properly allowable for Federal income tax purposes." *Id.* at ¶ 61. According to the Plaintiffs, Defendants did not disclose this information to the Plaintiffs. *Id.* at ¶ 62. Nine months later, the IRS published Notice 2000–44, entitled "Tax Avoidance Using Artificially High Basis." *Id.* at ¶ 66. This Notice was even more explicit in stating that purported losses arising from the aforementioned tax strategy are not allowable for Federal income tax purposes. *Id.* at ¶ 67. Once again, Plaintiffs contend that the Defendants ignored these red flags, at least with respect to Defendants' advice to Plaintiffs. *Id.* In June 2003, the IRS again issued new regulations in the form of Notice CC–2003–020 that "formalized" its position regarding the tax strategy. *Id.* at ¶ 90. As such, in Notice 2004–46 released in May 2004, the IRS offered to "settle" with the Plaintiffs and other similarly-situated taxpayers. *Id.* at ¶ 96. The Plaintiffs paid $20,852,277 in taxes, $2,085,277 in penalties and approximately $2,326,255 in interest. *Id.*

Plaintiffs' claims for relief against the Defendants include unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, a declaratory judgment of the Plaintiffs' rights under the agreements entered into with AIG and the status of these agreements, breach of duty of good faith and fair dealing, professional malpractice against BDO Seidman, L.L.P., Randy Frischer, Robert Greisman and Alan Frank (the "BDO Defendants"), breach of contract by the BDO Defendants and civil conspiracy.

On June 17, 2005, the Complaint was filed in the Circuit Court for the 11th Judicial Circuit in Miami–Dade County, Florida. On July 27, 2005, AIG International, Inc. ("AIG") removed the case to

federal court pursuant to 28 U.S.C. § 1331 "because the allegations of the Complaint raise substantial disputed issues of federal tax law and implicate a substantial federal interest in construing substantive tax law."[1] Defendant AIG International, Inc.'s Notice of Removal, at 2. On August 18, 2005, the Plaintiffs moved to remand the case back to state court because "the Plaintiffs' asserted right to relief here does not necessitate the resolution of a substantial federal question." Plaintiffs' Brief in Support of Motion to Remand ("Motion"), at 2. Thus, the issue before this Court is whether the state law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* —— U.S. ——, 125 S.Ct. 2363, 2368, 162 L.Ed.2d 257 (2005).

### Discussion

 On a motion to remand, "the removing party bears the burden of establishing jurisdiction." *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996) (*citing Tapscott v. MS Dealer Serv. Corp.,* 77 F.3d 1353, 1356 (11th Cir.1996)). The removal statute should be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 107–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941). This strict construction of removal statutes prevents "exposing the plaintiff to the possibility that they may win a final judgment in federal court, only to have it determined that the court lacked jurisdiction. . . ." *Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997). Nonetheless, the Supreme Court has recognized

that "in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable,* 125 S.Ct. at 2367. The "mere presence" of a federal issue, however, "does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Indeed, "[i]t has in fact become a constant refrain in such cases that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable,* 125 S.Ct. at 2367. Thus, the Supreme Court has recognized, and this Court is required to find in order to maintain jurisdiction, that the federal issue effecting removal must raise an "actually disputed and substantial" federal question. *Id.* Moreover, even if the Court determines that it has federal question jurisdiction, the Plaintiffs' claims must be those that "a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.

The Defendants argue that this case is properly in federal court in light of the Supreme Court's recent opinion in *Grable.* In that case, the Court held that jurisdiction in federal court was proper where the Plaintiff's claim was premised on "a failure of the IRS to give it adequate notice, as defined by federal law." *Id.* at 2368. In support of their contention, the Defendants note that the Complaint is "replete with references to the IRS, IRS Notices, provisions of the tax code, and defendants' alleged misrepresentations or negligent misunderstanding of relevant provisions of the tax code and IRS Notices." Defendant AIG International Inc.'s Opposition to

---

**1.** 28 U.S.C. § 1331 states: "The district court shall have original jurisdiction of all civil ac-

tions arising under the Constitution, laws or treaties of the United States."

Plaintiffs' Motion to Remand ("Def.Opp."), at 3. Furthermore, Defendants argue that there are "substantial tax questions" at issue, including: "Whether the federal tax code and referenced IRS Notices acted to invalidate the specific transactions plaintiffs entered into; whether plaintiffs were correctly informed as to the meaning and application of the federal tax code and IRS Notices to those transactions; and whether defendants unreasonably failed to understand how the federal tax code and IRS [N]otices would apply to those transactions." Def. Opp. at 8.

The Plaintiffs distinguish the facts of *Grable* in arguing for remand, because in *Grable* the primary issue was a federal one—that is, whether the notice of seizure that the IRS provided to the Plaintiff was valid under § 6335(a) of the tax code. Motion at 3. Indeed, the Supreme Court notes that the disputed meaning of the federal statute "appears to be the only legal or factual issue contested in the case." *Grable*, 125 S.Ct. at 2368. Here, "while some of Plaintiffs' state-law claims involve Defendants' failures to apply (or, in some case [sic], even disclose) I.R.S. Notice 1999–59, I.R.S. Notice 2000–44, and certain federal regulations and case law, there is no substantial dispute or controversy regarding the content or 'validity, construction or effect' of those notices, regulations or case law." Motion at 4. Plaintiffs' claims "arise from the Defendants [sic] promotion and implementation of a tax strategy that the Defendants knew or should have known was invalid under federal tax law and not the issue of whether the tax strategy was or was not invalid under federal law." Plaintiffs' Reply in Support of Motion to Remand ("Pl.Reply"), at 2.

In support of their respective positions, the parties reference multiple district court cases since *Grable* that purport to address a similar issue. *See, e.g., Becnel v. KPMG, LLP*, 387 F.Supp.2d 984 (W.D.Ark. 2005) (denying Plaintiff's motion to remand); *Cantwell v. Deutsche Bank Securities, Inc. d/b/a Deutsche Bank Alex Brown, Inc., et al.*, 2005 WL 2296049 (N.D.Tex. Sept.21, 2005) (granting Plaintiffs' motion to remand); *Sheridan v. New Vista, LLC, et al.*, 2005 WL 2090898 (W.D.Mich. Aug.30, 2005) (granting Plaintiffs' motion to remand). This Court concludes that the Defendants have not carried their burden of establishing that Plaintiffs' claims "necessarily raise a stated federal issue, actually disputed and substantial." [2] *Grable*, 125 S.Ct at 2368. As such, this Court respectfully disagrees with and declines to follow the Western District of Arkansas' opinion in *Becnel*.

As in the case at issue, in *Cantwell*, Deutsche Bank and others marketed a tax strategy in which clients bought a security, sold it short, and contributed the proceeds to a partnership in exchange for a partnership interest. *Cantwell*, 2005 WL 2296049, at *1. The defendants represented to the plaintiffs that this "Tax Strategy would

---

**2.** Because this Court does not find that the federal issue in this case is disputed or substantial, it need not address whether a federal forum is "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 125 S.Ct. at 2367. Nonetheless, this Court believes that there is a potential for a shift in the division of labor among state and federal courts if this Court were to deny Plaintiffs' motion. Other than an attenuated and perhaps even alternative interpretation of federal tax law, this case is no different from hundreds of state malpractice, negligence and breach of fiduciary duty cases filed in state court every year. To allow federal court jurisdiction here due to the "mere presence" of facts invoking federal tax issues would open the proverbial floodgates to a host of typically state law claims that are simply not appropriately litigated in federal court.

generate significant federal income tax benefits and would be supported by an independent legal opinion." *Id.* Furthermore, in response to an IRS audit, "[r]ather than litigate the validity of the Tax Strategy, [Plaintiffs] responded to an IRS offer of settlement" and paid over $8 million. *Id.* The *Cantwell* Court concludes that "[t]he thrust of Cantwell's petition is that defendants violated state law by concertedly 'duping' him into investing in a Tax Strategy from which they benefitted and that they reasonably should have known was illegal." *Id.* at *5.

The thrust of Plaintiffs' complaint here is identical. Defendants take a leap of logic when they summarily conclude that the plethora of references to the IRS and the tax code necessarily places "the interpretation and application of federal law in dispute." Def. Opp. at 3. A review of Plaintiffs' claims reveals that the Complaint does not call into question the proper interpretation of federal tax law, but rather concerns whether the Defendants knew or should have known that the tax strategy was invalid under federal law. *See* Compl. *Id.* ¶ 62 ("As a result of Notice 1999–59, the Defendants knew or certainly should have known that the IRS would assert that the purported losses arising from the Tax Strategy were improper and not allowable for tax purposes; however the Defendants intentionally did not disclose this information to Plaintiffs and, indeed, continued to tell them the exact opposite"); *id.* ¶ 67 (contending that the Defendants "simply ignored" IRS Notice 2000–44 "to the detriment of Plaintiffs ... [and] did not retract or modify their advice to the Plaintiffs in any way ..."); *id.* ¶ 69 ("There is no doubt that the Defendants knew or should have known as a result of IRS Notice 2000–44 issued on August 11, 2000, if not earlier, that the IRS would contend that the purported losses arising from the Plaintiffs' transaction were not properly allowable for Federal or State income tax purposes ..."); *id.* ¶ 102 (in its claim for unjust enrichment against AIG, stating that "AIG was or should have been aware that the IRS would claim that the Tax Strategy was invalid and that the Plaintiffs might not receive the benefit they paid for"); *id.* ¶ 107 (in its claim for breach of fiduciary duty against AIG, stating that AIG assisted Plaintiffs "in entering a transaction that, unbeknownst to the Plaintiffs, was illegal and improper and would be challenged by the IRS on the grounds that the transaction lacked economic substance, had no business purpose, was a 'sham transaction,' and violated the step transaction, sham transaction, and economic substance doctrines"); *See also* Compl. ¶¶ 112, 120, 122, 140, 145, 150, 158, 160, 168, 177, 183. Plaintiffs claims thus do not call into question the proper interpretation of the federal tax law (that is, whether the tax strategy implemented by the Defendants was in fact invalidated by the IRS Notices), but rather concern whether the view of the Defendants in continuing the tax strategy in light of the IRS Notices gives rise to liability. Additionally, the Complaint raises a host of other issues that do not require the invocation of federal law, including: (1) whether AIG International, Inc. was unjustly enriched through fees and premiums paid by the Plaintiffs, when AIG International, Inc. knew or should have known that the Plaintiffs would not receive the benefit of what they paid for; (2) whether Defendants' material omissions and Plaintiffs' reliance thereon constitutes fraud; (3) whether Defendants negligently misrepresented the nature of the foreign currency option contracts; (4) whether the Defendants, often serving in their capacity as tax advisors and accountants, committed malpractice; and (5) whether the Defendants breached their

contract with the Plaintiffs for failing to provide competent tax advice, accounting services and tax return preparation services.

Thus, this Court finds that Plaintiffs' claims arise under state law and were inappropriately removed to federal court. The mere fact that Plaintiffs' claims may present questions of federal tax law does not suffice to present a substantial federal question.

### Conclusion

Based on the foregoing it is ORDERED AND ADJUDGED that Plaintiffs' Motion to Remand (DE # 8) is GRANTED based on a lack of federal jurisdiction. This case is remanded to the Circuit Court of the 11th Judicial Circuit, in and for Miami–Dade County, Florida. It is further

ORDERED AND ADJUDGED that this case is CLOSED. All pending motions not ruled upon are DENIED AS MOOT.