IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 EASTERN DIVISION 

BARBARA JEAN STUBBS, ) 
f/k/a Barbara Stubbs Gill, ) 
 ) 
 Plaintiff, ) 
 ) 
 v. ) CASE NO. 3:20-CV-519-WKW 
 ) [WO] 
PARCEL 1, etc., et al., ) 
 ) 
 Defendants. ) 

 MEMORANDUM OPINION AND ORDER 
 I. INTRODUCTION 
 On June 22, 2020, Barbara Jean Stubbs (“Plaintiff”), an Alabama citizen, filed 
a complaint in the Circuit Court of Lee County, Alabama, seeking to quiet title to a 
piece of property described as “Parcel 1.” (Doc. # 1-1.) The complaint describes 
Parcel 1 as “Lot Eleven (11) Phase III, Rock Island Landing Subdivision, according 
to plat of said subdivision prepared by Thomas L. French Jr., on June 24, 1985, and 
recorded in the Office of the Judge of Probate of Lee County, Alabama in Plat Book 
11 at Page 199.” (Doc. # 1-1, at 3.) Plaintiff names the following entities and 
individuals as Defendants in her quiet title action: (1) SPMCA Corporation 
(“SPMCA”), a Washington citizen; (2) ELM Leasing, LLC (“ELM”), a Mississippi 
citizen; (3) Georgia Power Company (“Georgia Power”), a Georgia citizen; (4) 
Kaufman & Forman, P.C. (“K & F”), a Georgia citizen; (5) Ten Talents Ministry, 
an Integrated Auxiliary Chapter of the International Academy of Lymphology, a 
citizen of Georgia and Utah; (6) Sandra L. Gibbs (“Gibbs”), Joseph McKinnes 

(“McKinnes”), Zachary Thomas (“Mr. Thomas”), and Tammy Thomas (“Ms. 
Thomas”), all Alabama citizens; (7) John Gill (“Gill”), both individually and as 
trustee for IAL; (8) BillPay Processing of Georgia, LLC (“BillPay”), a Georgia 

citizen; and (9) Eastern Property Development, LLC (“EPD”), a Utah citizen. 
 On July 24, 2020, K & F removed the case to federal court based on diversity 
jurisdiction. 28 U.S.C. §§ 1332(a), 1441, and 1446(b)(3). Among other things, it 
contends that the non-diverse Defendants—Gibbs, McKinnes, Mr. Thomas, and Ms. 

Thomas (collectively “Judgment Creditors”)—were fraudulently joined to defeat 
federal-diversity jurisdiction. 
 Now before the court are two competing motions: Plaintiff’s Motion to 

Remand, as supplemented (Docs. # 11, 20), and K & F’s Motion to Transfer Venue, 
as supplemented (Docs. # 10, 21). Given that “a court should inquire into whether 
it has subject matter jurisdiction at the earliest possible stage in the proceedings,” 
the motion to remand will be addressed first. Univ. of S. Ala. v. Am. Tobacco Co., 

168 F.3d 405, 410 (11th Cir. 1999); see also 15 CHARLES ALAN WRIGHT & ARTHUR 
R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3843, n.2 (4th ed. 2018) (“When 
presented with competing motions to remand a case to state court and to transfer 

venue, a court will consider the remand motion first and then address transfer only 
if it denies the motion to remand.”). In short, Plaintiff’s motion to remand is due to 
be granted because K & F has not met its “heavy burden” of proving that Plaintiff 

fraudulently joined the Judgment Creditors. Crowe v. Coleman, 113 F.3d 1536, 
1538 (11th Cir. 1997). Accordingly, the motion to transfer will not be addressed. 
 II. STANDARD OF REVIEW 

 An action is removable if the joinder of a non-diverse party is fraudulent. 
Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). The 
presence of a fraudulently joined, non-diverse defendant does not defeat diversity 
jurisdiction because where the joinder is fraudulent, the court “must dismiss the non-

diverse defendant and deny any motion to remand the matter back to state court.” 
Florence v. Crescent Res., LLC, 484 F.3d 1293, 1297 (11th Cir. 2007). Generally, 
Fraudulent joinder exists in three situations: (1) “when there is no possibility that 

the plaintiff can prove a cause of action against the resident (non-diverse) 
defendant”; (2) “when there is outright fraud in the plaintiff’s pleading of 
jurisdictional facts”; or (3) “where a diverse defendant is joined with a nondiverse 
defendant as to whom there is no joint, several or alternative liability and where the 

claim against the diverse defendant has no real connection to the claim against the 
nondiverse defendant.” Triggs, 154 F.3d at 1287.1 

 1 Because K & F’s fraudulent joinder argument does not involve claims that Plaintiff 
engaged in “outright fraud” concerning the pleading of her jurisdictional facts, the following 
discussion is limited to the first and third situations outlined in Triggs. 
 Regarding the first type of fraudulent joinder, “[i]f there is even a possibility 
that a state court would find that the complaint states a cause of action against any 

one of the resident defendants, the federal court must find that the joinder was proper 
and remand the case to the state court.” Id. (quotations omitted). That possibility, 
however, must be “reasonable, not merely theoretical.” Legg v. Wyeth, 428 F.3d 

1317, 1325 n.5 (11th Cir. 2005). 
 The removing party bears the burden of proving fraudulent joinder by “clear 
and convincing evidence,” and the burden is “‘a heavy one.’” Stillwell v. Allstate 
Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011) (quoting Crowe, 113 F.3d at 1538). 

A court examines fraudulent joinder based on the plaintiff’s pleadings at the time of 
removal, but it also “may consider affidavits or deposition transcripts submitted by 
the parties.” Id.; see also Legg, 428 F.3d at 1324. Additionally, the court “draw[s] 

all reasonable inferences from the record in the plaintiff’s favor and then resolve[s] 
all contested issues of fact in favor of the plaintiff.” Crowe, 113 F.3d at 1541–42. 
In this way, the inquiry resembles that required on a motion for summary judgment; 
however, the inquiry differs in that the court may not “weigh the merits of a 

plaintiff’s claim beyond determining whether it is an arguable one under state law.” 
Id. at 1538. In other words, “there need only be ‘a reasonable basis for predicting 
that the state law might impose liability on the facts involved.’” Id. at 1542 (citation 

and internal quotation marks omitted). 
 III. BACKGROUND 
A. History Surrounding Parcel 1 

 This story begins in April 1994 when Patrick Araguel Jr. transferred his 
interest in Parcel 1 to Corporate Services Inc. N.W. (“Corporate Services”). (Doc. 
# 1-1, at 14.) More than six years later, on December 15, 2000, Gill, as executive 

officer and fiduciary of Corporate Services, conveyed an interest in Parcel 1 to Rev. 
Dr. Kerry Smith, trustee and fiduciary for the Order of the International Academy of 
Lymphology, an unincorporated association. (Doc. # 1-1, at 15.) That same day, 
Smith conveyed an interest in Parcel 1 by quitclaim deed to Ten Talents Ministry 

Integrated Chapter of the International Academy of Lymphology (“Ten Talents”), 
also an unincorporated association. (Doc. # 1-1, at 16.) Following that transaction, 
yet another conveyance took place on December 15, 2000—Gill, as executive 

director, minister, and fiduciary for Ten Talents, transferred an interest in Parcel 1 
to the 402 River Oak Commercial Real Estate Holding Trust (“River Oak Trust”). 
(Doc. # 1-1, at 17.) 
 The plot thickened in June 2011, when Parcel 1 became one of many 

properties subject to federal litigation before Judge Clay D. Land in the United States 
District Court for the Middle District of Georgia. Judge Land described the dispute 
as follows: 

 This action is the third in a series of civil cases before this Court 
 involving the same main characters fighting over the Gill Family 
 Cornerstone Trust enterprise, built by John Gill. Before the fighting 
 began, John Gill amassed an empire of rental properties, took a vow of 
 poverty, placed the properties into holding trusts that benefitted the 
 Cornerstone Trust, and continued to manage the properties . . . with the 
 help of Kevin Hartshorn and Dan Van Gasken. But then John Gill was 
 convicted of crimes in Florida, and he fled the country instead of 
 reporting to prison. The power vacuum created by John Gill’s absence 
 pitted Hartshorn and Van Gasken against John Gill’s brother Loren. 
 They have been fighting in this Court ever since . . . . 

S. E. Enter. Group, LLC v. Gill, No. 4:15-cv-25-CDL, 2015 WL 3465934, at *1 
(M.D. Ga. May 29, 2015). Alas, the fighting continues. Ultimately, Judge Land 
approved a settlement agreement reached by the parties and issued a permanent 
injunction ordering them to take certain actions regarding the various properties, 
including Parcel 1, involved in the case. See S. E. Enter. Group, LLC v. Gill, No. 
4:15-cv-25-CDL (M.D. Ga. Mar. 15, 2016), ECF No. 138. On November 17, 2017, 
pursuant to the permanent injunction, Corporate Services and Dan Van Gasken, as 
trustee of the River Oak Trust, conveyed Parcel 1 to SPMCA by quit claim deed. 
(Doc. # 1-1, at 18.) 
B. Plaintiff’s Interest in Parcel 1 
 On November 16, 2002, Plaintiff and Gill married. (Doc. # 1-1, at 3.) Nearly 
seventeen years later, on August 20, 2019, they divorced. According to Plaintiff, 
her interest in Parcel 1 stems from the fact that the property served as the marital 
home during the time that she and Gill were married, and that she was awarded 

Parcel 1 pursuant to a default judgment of divorce issued by the Circuit Court of Lee 
County, Alabama. (Doc. # 1-1, at 24–25.) The default judgment of divorce provided 
that Parcel 1 was marital property “because it was used regularly for the common 

benefit of the [Plaintiff and Gill] during the marriage.” (Doc. # 1-1, at 24.) The 
default judgement of divorce further found that: 
 [Gill] may have placed some or all the above listed properties in various 
 trusts, business [sic], or churches; however, evidence shows these items 
 were regularly, and in some cases exclusively, used in the course of the 
 marriage as marital property. The evidence further demonstrates that 
 these various entities were aware of the use of these items as marital 
 property. Moreover, evidence shows that after separation of the parties, 
 [Plaintiff] expended personal funds to repair and maintain these 
 properties. The Court hereby awards Plaintiff the marital interest in 
 [Parcel 1]. To the extent that the Defendant, [Gill], has any ownership 
 interest of any type in [Parcel 1], said interest is hereby awarded to 
 [Plaintiff]. The Court hereby orders [Gill], to either directly or by and 
 through his agent(s), employee(s), business entity(ies), or trustee(s) to 
 transfer all of his interest, whether direct or indirect, legal or beneficial 
 of whatever kind or nature in [Parcel 1] to [Plaintiff] within sixty (60) 
 days of the entry of this Order. 

(Doc. # 1-1, at 25–26.) Plaintiff alleges that she “has been in actual, peaceable 
possession of Parcel 1” since 2002. (Doc. # 1-1, at 4.) 
C. Defendants Sandra Gibbs’s, Joseph McKinnes’s, Zachary Thomas’s, and 
 Tammy Thomas’s Interest in Parcel 1 as Judgment Creditors 

 Plaintiff names Gibbs, McKinnes, Mr. Thomas, and Ms. Thomas as 
Defendants in her quiet title action given their alleged status as judgment creditors 
in relation to Parcel 1. To support the contention that the above-named Defendants 
are judgment creditors, Plaintiff relies on two pieces of evidence. 
 First, she submits a final judgment issued on November 6, 2007, by the Circuit 
Court of Montgomery County, Alabama in a case styled Sandra L. Gibbs, et al. v. 

Victory Crossing, LLC, and John Gill, 03-CV-99-2273. (Doc. # 37-4.) The final 
judgment reads: 
 [T]he Plaintiffs have established that the members of the Rule 23(b)(2) 
 Class previously certified by this Court are due a monetary judgment in 
 the sum of $1,914,000.00 . . . against Defendants Victory Crossing, 
 LLC and John Gill, who is also known as John Allen Gill, Junior. 
 Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED 
 that . . . a FINAL JUDGEMNT in favor of the Plaintiff Class in this 
 action is rendered against Defendant Victory Crossing, LLC, and 
 against Defendant John Gill . . . in the amount of $1,914,000.00 . . . as 
 well as all court costs, for which each are jointly and severally liable. 

(Doc. # 37-4.) Second, Plaintiff submits a certificate of judgment filed on January 
16, 2008, in the Office of the Probate Court of Lee County, Alabama. (Doc. # 37-
5.) The certificate of judgment reflects that the Judgment Creditors, all of whom 
were members of the state court class action, recovered a money judgment in the 
amount of $1,914,000.00 from Gill. Based on the final judgment and certificate of 
judgment, Plaintiff asserts that Gibbs, McKinnes, Mr. Thomas, and Ms. Thomas 
established a lien against Parcel 1, thus making them judgment creditors under 
Alabama law. 
 IV. DISCUSSION 
 As mentioned above, K & F contends that the Alabama citizenship of the 

Judgment Creditors2 should not be considered in determining whether diversity 
jurisdiction exists because Plaintiff fraudulently joined them. K & F’s argument 
goes like this: 

 Sandra L. Gibbs, Zachary Thomas, Tammy Thomas, and Joseph 
 McKinnes were fraudulently joined because their interest [in Parcel 1] 
 depends on John Gill having a personal interest in the land, which he 
 has not had at any time, much less at any time post Judgment, and 
 because they never attempted to enforce their judgment against the land 
 before it was transferred to a party holding priority under the law. 

(Doc. # 33, at 5.) K & F’s argument is unavailing because K & F has failed to meet 
its heavy burden of proving, by clear and convincing evidence, that Plaintiff’s quiet 
title action against the Judgment Creditors has no reasonable possibility of success 
in state court.3 

 2 While K & F initially alleged in its notice of removal that the Judgment Creditors were 
“by information and belief, domiciled in the State of Georgia,” (Doc. # 1, at 4), the record indicates 
that it has abandoned that allegation. Specifically, at the time of removal, Plaintiff had yet to 
perfect service on any of the Judgment Creditors. However, since removal, Plaintiff has served 
each of the Judgment Creditors at addresses located within Alabama, (see Doc. # 20-2), and 
nowhere in the parties’ briefs do they dispute that the Judgment Creditors are Alabama citizens. 
In fact, K & F’s argument that Plaintiff fraudulently joined the Judgment Creditors is a concession 
that the Judgment Creditors are Alabama citizens for diversity jurisdiction purposes. 

 3 Because Plaintiff did not fraudulently join the Judgment Creditors, the court need not 
and declines to decide whether Gill, who is still a fugitive from justice believed to be living in 
Mexico, has established citizenship in a foreign state. 
 The Alabama Supreme Court has held that a plaintiff enjoys the right to quiet 
title provided that: 

 (1) [she] is in peaceable possession of the land, whether actual or 
 constructive, claiming to own the same in [her] own right, or in a 
 representative capacity; (2) . . . [her] claim is denied or disputed or 
 when any other person claims or is reputed to own the same or any part 
 thereof; and (3) no suit is pending to enforce or test the validity of such 
 title or claim. 

Gill v. Moore, 76 So. 453, 459 (Ala. 1917) (emphasis added); see also TILLEY’S 
ALABAMA EQUITY § 13:3 (5th ed. 2020) (listing the elements a plaintiff must prove 
in a quiet title action under Alabama law). Moreover, Alabama Code § 6-6-650, the 
statute governing quiet title actions, allows a plaintiff to bring a quiet title claim 
“against . . . any and all persons claiming, or reputed to claim, any . . . lien” on the 
piece of property at issue in order “to clear up doubts or disputes concerning the 
same.” (emphasis added). Thus, the question becomes whether there is a reasonable 
possibility that the Judgment Creditors could establish a lien on Parcel 1. 
 To establish a judgment lien under Alabama law, an owner of a judgment must 
comply with the requirements outlined in Alabama Code § 6-9-210.4 Provided that 

 4 In pertinent part, § 6-9-210 reads: 

 The owner of any judgment entered in any court of this state or of the United 
 States held in this state may file in the office of the judge of probate of any 
 county of this state a certificate of the clerk or register of the court by which 
 the judgment was entered, which certificate shall show the style of the court 
 which entered the judgment, the amount and date thereof, the amount of 
 costs, the names of all parties thereto and the name of the plaintiff’s attorney 
 and shall be registered by the judge of probate in a book to be kept by him 
the owner of a judgment fulfills the requirements listed in § 6-9-210, “[e]very 
judgment . . . shall be a lien in the county where filed on all property of the defendant 

which is subject to levy and sale under execution, and such lien shall continue for 
10 years after the date of such judgment.” Ala. Code § 6-9-211. Further, “[i]f 10 
years have elapsed from the entry of the judgment without issue of execution or if 

10 years have elapsed since the date of the last execution issued, the judgment must 
be presumed satisfied, and the burden of proving it is not satisfied is upon the 
plaintiff.” Ala. Code § 6-9-191. Section 6-9-191 “establishes a rebuttable 
presumption” that the defendant has satisfied the judgment. Johns v. Johns, 291 So. 

3d 505, 508 (Ala. Civ. App. 2019). 
 Importantly, however, a judgment that has been presumed satisfied due to a 
plaintiff’s failure to execute on it is subject to renewal within twenty years from the 

entry of the original judgment. See Ala. Code § 6-9-190 (“A judgment cannot be 
revived after the lapse of 20 years from its entry.”); Ala. Code § 6-9-192 (“No 
execution shall issue on a judgment of the district or circuit court on which an 
execution has not been sued out within 10 years of its entry until the same has been 

revived by appropriate motion or action under the Alabama Rules of Civil 
Procedure.”). Once an Alabama state court revives a judgment otherwise presumed 

 for that purpose, which said register shall also show the date of the filing of 
 the judgment. 
satisfied, “[t]he order to revive does no more than reinvest the [judgment creditor] 
with the right to have execution of his original judgment.” Davis Int’l., Inc. ex rel. 

Patel v. Berryman, 730 So. 2d 242, 244 (Ala. Civ. App. 1999) (quotations and 
citation omitted) (first alteration added). 
 Here, it is undisputed that on November 6, 2007, the Circuit Court of 

Montgomery County, Alabama entered a final judgment in favor of the Judgment 
Creditors against Gill. (Doc. # 37-4.) It is also undisputed that on January 16, 2008, 
the Judgment Creditors recorded their final judgment in the Office of the Probate 
Court of Lee County, Alabama. (Doc. # 37-5.) 5 Once the Judgment Creditors filed 

the certificate of judgment, they created “a blanket lien on all of the property” that 
Gill owned located in Lee County, Alabama, which arguably included Parcel 1.6 
Smith v. Arrow Transp. Co., 571 So. 2d 1003, 1006 (Ala. 1990). True, ten years 

 5 While K & F is silent on this issue, it is worth noting that the certificate of judgment only 
references Sandra Gibbs as a plaintiff in the underlying state court action. The document does not 
mention McKinnes, Mr. Thomas, or Ms. Thomas. However, the certificate of judgment does bear 
the same case number and monetary award as the underlying final judgment issued in state court. 
Given the matching case number and monetary award, the court need not address how the lack of 
an express reference to McKinnes, Mr. Thomas, and Ms. Thomas in the certificate of judgment 
might impact their status as judgment creditors. 

 6 Plaintiff and K & F dispute whether Gill possessed an interest in Parcel 1 prior to the 
Judgment Creditors filing their certificate of judgment on January 16, 2008. Keeping in mind that 
at this stage the court “draw[s] all reasonable inferences from the record in the plaintiff’s favor 
and then resolve[s] all contested issues of fact in favor of the plaintiff,” there is at least a reasonable 
possibility that Gill possessed an interest in Parcel 1 at the time the Judgment Creditors filed their 
certificate of judgment. Crowe, 113 F.3d at 1541–42. For instance, it is undisputed that Parcel 1 
served as Plaintiff’s and Gill’s marital home at the time the Judgment Creditors filed their 
certificate of judgment, suggesting that Gill did possess an interest in the property to which the 
lien could attach. 
have passed since the entry of judgment without execution, but the judgment remains 
subject to renewal until November 6, 2027. See Ala. Code § 6-9-190. In other 

words, the Judgment Creditors could, at any time until November 6, 2027, revive 
their judgment lien on Parcel 1, thus casting doubt on who possesses title to the 
property. In light of the uncertainty created by such a scenario—the exact kind of 

uncertainty that Alabama’s quiet title statute is designed to address—it makes sense 
why Plaintiff named the Judgment Creditors as defendants in this case. Based on 
the Judgment Creditors’ compliance with the statutory provisions governing the 
creation of liens and the fact that their original judgment is subject to renewal until 

November 6, 2027, there is at least a reasonable possibility that an Alabama state 
court would find that Plaintiff’s complaint states a quiet title cause of action against 
the Judgment Creditors. 

 K & F argues that the Judgment Creditors’ failure to execute on their lien 
during the ten-year period prescribed by Ala. Code § 6-9-211, combined with the 
two subsequent court orders7 concerning Parcel 1, extinguished their right to claim 
a lien on the property. (Doc. # 33, at 7.) Specifically, K & F contends that both 

SPMCA and Plaintiff took priority status over the Judgment Creditors pursuant to 

 7 See South East Enterprise Group, et al. v. Gill, et al., No. 4:15-cv-25-CDL (M.D. Ga. 
Mar. 15, 2016), ECF No. 138 (ordering Corporate Services and Dan Van Gasken, as trustee of the 
River Oak Trust, to convey Parcel 1 to SPMCA); (Doc. # 1-1, at 24–25 (default judgment of 
divorce ordering Gill to transfer his interest in Parcel 1 to Plaintiff).) 
the respective court orders. This argument misses the mark because the Judgment 
Creditors’ rights in Parcel 1 attached after they recorded their certificate of judgment 

and their rights in the property had “priority over all rights arising out of 
subsequently recorded instruments.” Smith, 571 So. 2d at 1006. And given that any 
revival of the judgment lien would “reinvest” the Judgment Creditors with the right 

to execute the original judgment, see Davis Int’l., Inc. ex rel. Patel, 730 So. 2d at 
245, it stands to reason that they would also enjoy priority status over both Plaintiff 
and SPMCA. 
 Additionally, K & F contends that “it is improper to modify a valid property 

settlement later than thirty days after the divorce decree has been issued.” (Doc. # 
33, at 9 (quoting Ex parte Smith, 429 So. 2d 1050, 1052 (Ala. 1983).) Thus, 
according to K & F, if the Judgment Creditors wanted to revive their judgment lien 

on Parcel 1, they should have done so within thirty days of the Circuit Court of Lee 
County, Alabama issuing its default judgment of divorce. Despite K & F’s 
contentions, Ex parte Smith is readily distinguishable from the case at bar. 
 In Ex parte Smith, the Alabama Supreme Court held that the parties to a 

divorce decree could not modify the terms of the decree by subsequent agreement 
between themselves. Ex parte Smith, 429 So. 2d at 1052. Unlike Ex parte Smith, 
the Judgment Creditors are not parties to the divorce decree between Plaintiff and 

Gill. Put differently, the divorce decree does not settle the rights and obligations of 
the Judgment Creditors as it relates to Parcel 1. Further distinguishing Ex Parte 
Smith is the fact that the Judgment Creditors’ asserted interest in Parcel 1 does not 

arise from an agreement reached after the entry of the divorce decree between 
Plaintiff and Gill. Rather, their interest flows from a certificate of judgment filed 
more than eleven years prior to the entry of the divorce decree. 

 Finally, to the extent that K & F asserts that Plaintiff fraudulently joined the 
Judgment Creditors under the third scenario outlined in Triggs, that argument also 
fails. Specifically, K & F has not established that the claim brought against the 
Judgment Creditors has no real connection with the claim brought against the other 

Defendants. Indeed, the claim against the Judgment Creditors is inextricably 
intertwined with the claim against the other Defendants insofar as Plaintiff’s quiet 
title action seeks to settle the respective interests of all Defendants in the same piece 

of property—Parcel 1. 
 V. CONCLUSION 
 Plaintiff did not fraudulently join the Judgment Creditors because there is at 
least a reasonable possibility that an Alabama state court would find that the 

complaint states a quiet title cause of action against the Judgment Creditors. As a 
result, the Alabama citizenship of the Judgment Creditors must be considered. When 
so considered, complete diversity does not exist. While the motion to remand is due 

to be granted on this basis alone, another important consideration also counsels in 
favor of remand—Plaintiff’s quiet title action turns on questions of Alabama 
property law and “such [questions are] emphatically [matters] for state courts to 

decide.” Henderson v. Washington Nat’l Ins. Co., 454 F.3d 1278, 1282 (11th Cir. 
2006) (citation omitted) (alterations added). 
 Accordingly, it is ORDERED that Plaintiff’s motion to remand, as 

supplemented (Docs. # 11, 20), is GRANTED. 
 The Clerk of the Court is DIRECTED to take the action necessary to 
accomplish the remand of this case to the Circuit Court of Lee County, Alabama. 
 DONE this 27th day of January, 2021. 

 /s/ W. Keith Watkins 
 UNITED STATES DISTRICT JUDGE