[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17727
_____

D.C. Docket No. 6:12-cv-01618-ACC-KRS

FEDERAL TRADE COMMISSION,

Plaintiff - Appellee,

versus

WV UNIVERSAL MANAGEMENT, LLC,
a Florida limited liability company,
d.b.a. Treasure Your Success, et al.,

Defendants,

UNIVERSAL PROCESSING SERVICES OF WISCONSIN, LLC,
a New York limited liability company,
d.b.a. Newtek Merchant Solutions,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(December 13, 2017)

Before ED CARNES, Chief Judge, BLACK, Circuit Judge, and MAY,[*] District Judge.

BLACK, Circuit Judge:

The Telemarketing Sales Rule (TSR), 16 C.F.R. § 310.1 *et seq.*, promulgated by the Federal Trade Commission (FTC), prohibits certain deceptive and abusive telemarketing practices. It also makes assisting and facilitating a TSR violation unlawful. *Id.* § 310.3(b). In 2011 and 2012, a number of individuals and closely held corporations known as Treasure Your Success (TYS) operated a fraudulent credit card interest reduction scheme. Universal Processing Services of Wisconsin, LLC (Universal) violated the TSR by providing substantial assistance to the TYS schemers. At this stage in the litigation, only the extent—but not the fact—of Universal's liability is in dispute. The district court held Universal jointly and severally liable with the members of the TYS scheme; Universal contests that judgment, and the FTC defends it. The sole issue before us is whether joint and several liability was available as a matter of law, and we hold that it was. Accordingly, we affirm.

---

[*] Honorable Leigh Martin May, United States District Judge for the Northern District of Georgia, sitting by designation.

2

# I. BACKGROUND

TYS's brief but active existence began in November 2011.[1]  Operating out of Winter Park, Florida, Willy Plancher, Valbona Toska, and Jonathon Warren, together with a handful of corporate entities they controlled, conceived and operated TYS to extract payments from consumers in exchange for fraudulent credit card interest reduction services.  The scheme operated roughly as follows.  TYS would cause automated calls to be made to consumers informing them that they could lower their credit card interest rates by dialing the number one.  Any call recipient who did so would be transferred to a series of live TYS representatives.  The sales agents would "promis[e] . . . the world," albeit in an intentionally confusing manner, in order to persuade the consumer to divulge his or her credit card number.  Agents were instructed to represent that by authorizing TYS to charge between $600 and $1000 to the consumer's credit card, the consumer would be entitled to receive $2500 or more in credit card interest rate reductions.  Of course, TYS did not have the ability to make good on these promises.  It did, however, manage to fraudulently amass more than $2.5 million by means of them.

---

[1] In this appeal, neither party disputes the material facts set forth in the district court's summary judgment order.  In addition, in a prior appeal before this Court, Universal challenged only the remedy imposed on it, but not the district court's grant of summary judgment.  Accordingly, the facts herein are drawn from the summary judgment order.

Universal is a payment processor.  Its involvement began when it approved TYS as one of its merchant customers.  Like many merchants, TYS used a payment processor to charge customers' credit cards and deposit the funds in its bank account.  Hal Smith, an independent sales agent who had worked with Universal for roughly a decade, was also involved in the TYS scheme.  Smith referred TYS to Universal and procured a merchant account on TYS's behalf.  Because Smith's referrals to Universal over the prior ten years had been so profitable, the merchant applications Smith brought to Universal were personally reviewed by Universal's then-president, Derek DePuydt.

On Smith's referral, DePuydt approved TYS's first merchant account with Universal, despite several glaring red flags indicating TYS might be a fraud risk.  In particular, both Plancher and Toska, proprietors of TYS, had serious credit delinquencies.  After the first account was established, TYS began to experience an unusually high number of chargebacks, or instances in which a credit card provider demands a refund of a disputed transaction on behalf of its customer.  The chargeback levels were so significant that MasterCard took notice of TYS as a potential fraud risk.  But, despite mounting evidence of fraud, DePuydt approved a second TYS merchant account.

It did not take long for the FTC to expose the TYS schemers.  In October 2012, the FTC filed this suit against Plancher and Toska and their related corporate

entities, alleging violations of the Federal Trade Commission Act (the FTC Act), 15 U.S.C. § 41 *et seq.*, the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 *et seq.*, and the TSR.  After discovery had commenced, the FTC added eight additional defendants, including Smith, DePuydt, and Universal.  Only the final count of the amended complaint averred any wrongdoing on the part of DePuydt and Universal.  That count, Count Twelve, alleged that Universal and DePuydt provided substantial assistance or support to the members of the TYS scheme, who Universal and DePuydt knew, or consciously avoided knowing, were engaged in violations of the TSR.

In 2014, the FTC moved for summary judgment against the defendants. After numerous settlements, only Universal, Smith, and HES Merchant Services Company (HES), Smith's wholly-owned personal corporation, remained to oppose the motion.  The district court granted summary judgment to the FTC on all counts, including Counts One through Eleven against Smith and HES and Count Twelve against Universal and DePuydt.  With respect to Count Twelve, the court found the FTC had established that Universal, through DePuydt, knew or consciously avoided knowing of the fraudulent activities TYS conducted, and that Universal substantially assisted TYS in perpetrating the scheme by providing the merchant accounts.

5

The FTC subsequently filed a Motion for Equitable Monetary Relief Judgment against Smith, HES, and Universal seeking disgorgement in the amount of $1,734,972; that is, the amount of the unjust gains that accrued to the TYS scheme less chargebacks and refunds already remitted. The district court found the defendants were jointly and severally liable for the entire amount of restitution.

The defendants appealed to this Court. Smith and HES appealed both the merits of summary judgment and the court's imposition of joint and several liability. Brief of Appellants HES Merchant Services Co. & Hal E. Smith at 3, *FTC v. HES Merch. Servs. Co.*, 652 F. App'x 837 (11th Cir. 2016) (Nos. 15-11500, 15-13380). Universal, on the other hand, challenged joint and several liability only. Opening Brief of Defendant-Appellant Universal Processing Services of Wisconsin, LLC at 1, *HES Merch. Servs.*, 652 F. App'x 837. We affirmed with respect to Smith and HES. *HES Merch. Servs.*, 652 F. App'x at 838. In particular, we agreed with the district court's conclusion that Smith and HES could be held jointly and severally liable because they had operated together with the other TYS defendants as a common enterprise in perpetrating the fraud. *Id.*

However, we vacated the district court's award of equitable monetary relief against Universal. *Id.* We held the district court had not explained why Universal's conduct warranted joint and several liability, since its common enterprise finding did not extend to Universal. *Id.* We remanded the case and

6

instructed the district court to state whether Universal was a part of the common enterprise or, if not, what other grounds there were for imposing joint and several liability. *Id.*

On remand, the district court reasoned that a violation of the TSR constitutes an "unfair or deceptive act or practice" in violation of the FTC Act. As such, the district court was authorized to order restitution and disgorgement under the Act. Furthermore, the court clarified that Universal's liability was premised on substantial assistance rather than on a common enterprise theory. Observing the dearth of cases involving substantial assistance under the TSR, the district court looked to tort and securities law for guidance. Both sources of law suggested that joint and several liability is appropriate where a defendant substantially assists the primary violator. In short, the district court clarified that substantial assistance under the TSR was itself sufficient to justify joint and several liability. The court reaffirmed its order holding Universal jointly and severally liable, and Universal filed the instant appeal.

## II. STANDARD OF REVIEW

"We review a district court's order granting equitable monetary relief for abuse of discretion." *FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1325 (11th Cir. 2013). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an

7

award upon findings of fact that are clearly erroneous." *Id.* at 1326 (quoting *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990)).

## III. DISCUSSION

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1).   The Telemarketing and Consumer Fraud and Abuse Prevention Act directs the FTC to make rules "prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." *Id.* § 6102(a)(1).  Accordingly, the FTC promulgated the TSR, which does exactly that.  *See* 16 C.F.R. § 310.3(a), (c)–(d) (deceptive practices); *id.* § 310.4 (abusive practices).  Relevant here, the rule also provides as follows:

> It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule.

*Id.* § 310.3(b).  It was undisputed in both this and the prior appeal that Universal violated this provision by providing two merchant accounts to TYS despite a slew of red flags indicating TYS was engaged in a fraudulent telemarketing scheme. Thus, for the purposes of this appeal, it has been established as a matter of law that Universal violated the TSR:  Universal provided substantial assistance or support to TYS despite knowing or consciously avoiding knowing that TYS was engaged in violations of the FTC's telemarketing rules.

8

Section 13(b) of the FTC Act authorizes "the FTC to seek, and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the Commission." *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996) (citing 15 U.S.C. § 53(b)).  Although that provision does not expressly authorize courts to grant monetary equitable relief, this Court has held that "the unqualified grant of statutory authority to issue an injunction under section 13(b) carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits." *Id.* Disgorgement and restitution may be joint and several.  *FTC v. Commerce Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016) (holding that district courts may impose joint and several restitution liability and observing that "[e]quity courts have long exercised the power to impose joint and several liability"), *cert. denied*, 137 S. Ct. 624 (2017).  The sole issue, then, is whether the district court abused its discretion by ruling that Universal's violation of the TSR's substantial assistance rule justifies holding Universal jointly and severally liable with the members of the TYS scheme.

*A. Common Enterprise*

As noted above, the district court did not find Universal to be a part of a common enterprise with the other TYS defendants.  Rather, it determined Universal could be held jointly and severally liable by virtue of its violation of the

TSR alone.  Universal contends that was error and joint and several liability can only lie where the defendant is a participant in a common enterprise with the primary violators.

Universal is correct that courts have justly imposed joint and several liability where a common enterprise exists.  *See, e.g.*, *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 636–37 (6th Cir. 2014).  But in contending joint and several liability cannot exist absent a common enterprise, Universal mistakes a sufficient condition for a necessary one.  That a common enterprise finding can support joint and several liability does not mean that such liability cannot attach without one.  Universal cites no authority for that proposition, and we have found none.

*B. Joint and Several Liability for Substantial Assistance*

We hold that a violation of the TSR's substantial assistance rule can support joint and several liability to the extent of the unjust gains.  Consequently, it was within the district court's discretion to hold Universal jointly and severally liable with the TYS defendants.

To begin with, we agree with the district court that the text of the TSR supports our conclusion.  The substantial assistance rule itself states that any violation of it constitutes a violation of the TSR.  16 C.F.R. § 310.3(b) ("It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance . . . .").  Similarly, the Telemarketing and Consumer

10

Fraud and Abuse Prevention Act states that any violation of a rule promulgated thereunder (such as the TSR) constitutes a violation of the FTC Act and subjects the violator to its penalties.  15 U.S.C. § 6105(b).  Finally, Section 13(b) of the FTC Act authorizes "the FTC to seek, and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the Commission," and this includes the power to grant equitable monetary relief of the kind sought here.  *Gem Merch. Corp.*, 87 F.3d at 468; 15 U.S.C. § 53(b).  Therefore, by violating the TSR, Universal violated the FTC Act and is subject to its penalties.

The FTC directs our attention to aider-abettor principles in support of this interpretation, and the legal concepts we find there satisfy us that our holding is correct.  In promulgating the TSR, the FTC expressly stated that it took guidance from comparable tort and securities concepts in formulating the rule.  In its statement of basis and proposed final rule, the FTC noted that "knowledge of, and substantial assistance to, another's wrongdoing are a sufficient basis for liability in tort."  Telemarketing Sales Rule, 60 Fed. Reg. 43842, 43851 (Aug. 23, 1995).  The FTC invoked Section 876(b) of the Restatement of Torts, which provides that:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so as to conduct himself . . . .

11

*Id.* at 43851 n.96 (quoting Restatement (Second) of Torts § 876(b) (1977)).  There can be little mistaking the resemblance between the Restatement § 876(b) and the TSR.  The provisions share the same three basic elements:  a primary violation; substantial assistance or encouragement (in the case of the Restatement) or support (the TSR); and knowledge (the Restatement and the TSR) or conscious disregard (the TSR).

The TSR's resemblance to a well-established torts concept is noteworthy because aiding and abetting in tort can result in joint and several liability.[2]  In tort, the aider-abettor is liable to the injured party "for the entire harm."  Restatement (Second) of Torts § 875 & cmt. a (1979) (referring to § 876 as a "specific application[ ] of the rule here stated"); *accord Thompson v. Johnson*, 180 F.2d 431, 433–34 (5th Cir. 1950) (listing, among "settled principles of law," the rule that "persons who aid, abet, or procure the commission" of a tort are jointly and severally liable where the aider-abettor is "present, assist[s], or participate[s]" in the tort).  We extend the analogy:  Universal may be held jointly and severally

---

[2] The Restatement's pedigree on this topic is well established.  *See Halberstam v. Welch*, 705 F.2d 472, 476–86 (D.C. Cir. 1983) (adopting the Restatement formulation in a lengthy discussion of aiding and abetting liability in tort); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181, 114 S. Ct. 1439, 1450 (1994) (calling *Halberstam* "a comprehensive opinion on the subject" of aiding and abetting liability); *Doe v. Drummond Co.*, 782 F.3d 576, 608 n.44 (11th Cir. 2015) ("Although we explicitly cited *Halberstam* for conspiracy liability [in an Alien Tort Statute case], we clearly incorporated and applied *Halberstam*'s aiding and abetting standards as well. In turn, *Halberstam* relied upon the Restatement (Second) of Torts to set the standards for aiding and abetting liability.").

12

liable with the TYS defendants for providing them substantial assistance in violation of the TSR. *Cf. Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017) ("If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." (citing Restatement (Second) of Torts § 875 (1977))).

Before moving on, we note that we also find securities law aiding and abetting instructive.[3] Like the Restatement and the TSR, the test for liability there requires a primary violation, substantial assistance, and a culpable state of mind. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 800 (11th Cir. 2015); 15 U.S.C. § 78t(e). The securities formulation, however, bears perhaps even more striking a resemblance to the TSR because "severe recklessness can satisfy the scienter requirement in [a securities] aiding and abetting case."[4] *Big Apple*, 783 F.3d at 800 (quotation and alteration omitted). The Restatement requires knowledge; recklessness is an even closer analog to "consciously avoid[ing] knowing" as set forth in the TSR.

---

[3] Although the Supreme Court eliminated aiding and abetting suits by private plaintiffs in 1994, Congress made clear in the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, § 104, 109 Stat. 737, that the SEC may still bring such suits. *See SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 799–800 (11th Cir. 2015); 15 U.S.C. § 78t(e).

[4] In so holding, *Big Apple* applied judicial gloss to the pre-2010 version of 15 U.S.C. § 78t(e), which spoke only of knowing, but not reckless, substantial assistance. *Big Apple*, 783 F.3d at 798 n.6. In 2010, Dodd-Frank amended that section to explicitly include recklessness. Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 929O , 124 Stat. 1376, 1862 (2010).

The FTC recognized this similarity when it promulgated the TSR, specifically invoking securities law in explaining the TSR's substantial assistance rule. *See* Telemarketing Sales Rule, 60 Fed. Reg. at 43851 & n.97. The analogy to securities law further persuades us that joint and several liability is appropriate in substantial assistance cases under the TSR.[5] *See* 15 U.S.C. § 78t(e) ("[For certain actions brought by the SEC], any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided."); 4 Thomas Lee Hazen, The Law of Securities Regulation § 12:207 (7th ed. 2017) ("Until 1994 [when the Supreme Court eliminated private aiding and abetting suits], aiders and abettors were generally held to be jointly and severally liable to plaintiffs for [securities] violations and were often viewed as better sources from which to seek monetary awards.").

Finally, we are not concerned that our holding will work any injustice in practical application. Liability for substantial assistance under the TSR can attach

---

[5] Universal points to *SEC v. Hughes Capital Corp.*, 124 F.3d 449 (3d Cir. 1997) and *SEC v. Monterosso*, 756 F.3d 1326 (11th Cir. 2014) for the proposition that the district court must find, at the very least, that the defendant collaborated or was closely associated with the primary violator before it can impose joint and several liability. But Universal fails to explain what difference it sees between collaboration or close association and substantial assistance or support. Even so, the argument suffers from the same fundamental deficiency as its common enterprise argument: these findings may be sufficient, but there is no indication that they are necessary, conditions for joint and several liability.

only if the defendant knows or consciously avoids knowing that the person to whom the defendant renders such assistance is engaged in telemarketing violations. The requirement of a culpable mind assures us that joint and several liability will not result in collateral damage to innocent third parties.

*C. Whether the District Court Abused Its Discretion in Determining the Amount of Restitution*

Conceding for argument that joint and several liability was available, Universal points to several reasons the district court erred in calculating the amount of restitution Universal owed. None persuade us.

First, Universal contends the district court should not have held it jointly and severally liable because liability could be apportioned. That is, one can easily track how much money flowed into Universal's coffers and separate that amount from the sums that ended up going to TYS. True enough, but apportionment is appropriate only where "there are *distinct harms*" or where "there is a reasonable basis for determining the contribution of each *cause* to a single harm." Restatement (Second) of Torts § 433A(1)(a) & (b) (1965) (emphasis added). By contrast, Universal seeks to apportion the unjust *gains*. But neither the distinct portion of the harm Universal caused nor Universal's relative contribution to the undivided harm can be determined. The harm to each consumer defrauded by the TYS scheme is indivisible—in each case, the whole amount was caused by the

15

actions of both the TYS defendants and Universal together.[6]  And there is no

reasonable basis on which to determine the relative contribution of Universal's

conduct to the single harm; without its payment processing services, no money

would have been stolen.[7]  Apportionment cannot preserve Universal from joint and

several liability.[8]  *See Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S.

599, 614–15, 129 S. Ct. 1870, 1881 (2009) ("When two or more causes produce a

single, indivisible harm, 'courts have refused to make an arbitrary apportionment

for its own sake, and each of the causes is charged with responsibility for the entire

harm.'" (quoting Restatement (Second) of Torts § 433A cmt. *i* (1963–64))); *see*

*also Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 & n.8,

---

[6] An example of distinct harms:  "two defendants independently shoot the plaintiff at the same time, and one wounds him in the arm and the other in the leg."  *Id.* § 443A cmt. b.  The harms can be apportioned; each shooter is liable to the plaintiff for the distinct harm he caused. *Id.*

[7] An example of a reasonable basis for determining the contribution of each cause:  two ranchers negligently fail to restrain their cattle, which then trample the crops of a farmer.  If three of the cattle belong to one rancher and two to the other, it can be assumed that each cow caused a proportional amount of the damage, and that liability can be apportioned according to the number of cows owned by each rancher.  *See id.* § 443A cmt. d.

[8] Universal misreads the Tenth Circuit case of *FTC v. Chapman*, 714 F.3d 1211 (10th Cir. 2013), one of the few appellate opinions that deals with the TSR.  Universal asserts that "rather than impose joint and several liability on the defendant for the entire amount of the fraud, the Tenth Circuit affirmed the district court's finding that the defendant remit only the money she was paid for the services she provided."  Brief of Appellant at 44.  That is a mischaracterization of the case.  The district court held the defendant liable for the full amount of her unjust receipts, and denied her motion for remittitur.  *Chapman*, 714 F.3d at 1215.  The Tenth Circuit affirmed the denial.  *Id.* at 1219.  The issue of joint and several liability was simply not before the court.  *Chapman* is not on point and lends no support to Universal's argument, and in any event its relevance with respect to apportionment is not apparent.

16

99 S. Ct. 2753, 2756 & n.8 (1979) (restating identical principles of apportionment in an admiralty context).

Next, Universal submits that because it received only a small portion of the gains from the scheme and passed the rest on to TYS, it can be forced to disgorge only the amount it retained, because "[t]he equitable remedy of restitution does not take into consideration the plaintiff's losses, but only focuses on the defendant's unjust enrichment." *Wash. Data Res.*, 704 F.3d at 1326 (quoting *CFTC v. Wilshire Inv. Mgmt. Co.*, 531 F.3d 1339, 1345 (11th Cir. 2008)). This contention, however, fails as well. The district court found that the total amount of unjust gains *to all the defendants* equaled $1,734,972 after chargebacks and refunds. Differentiating between money Universal ultimately kept and funds it passed on to the TYS schemers is merely another way of challenging joint and several liability, an issue we have already decided. Universal's argument in reality has nothing to do with the measure of restitution, and the district court did not err in calculating it.

Though courts must determine restitution based on the defendant's unjust enrichment, and not the consumer's losses, the two amounts will often equate. *See Wash. Data Res.*, 704 F.3d at 1326. That will not always be the case, however, which brings us to Universal's final argument. Universal attempts to draw an analogy between this case and *FTC v. Verity International Ltd.*, 443 F.3d 48 (2d Cir. 2006). The defendants in *Verity* operated an online pornography scheme.

17

Rather than accept payment from customers via credit card, the defendants set up the pornography website to bill users for international calls to Madagascar. *Id.* at 51. Charges would accrue through the telephone system and show up on customers' telephone bills, rather than on their credit card statements. *Id.* at 51–52. The international telephone companies carrying the Madagascar calls deducted their usual fees in exchange for their services, so the defendants received only a portion of the amount ultimately billed to the consumer. *Id.* at 53–54. The Second Circuit held that telephone companies' fees should not have been included in the measure of restitution, because although they constituted losses to consumers (the charges accounted for a portion of the total telephone bill, but not the whole thing), the fees never made it to the defendants. *Id.* at 67–68. The defendants thus could not be forced to disgorge the phone companies' fees, because those amounts did not unjustly enrich the defendants. *Id.*

Universal attempts to cast the amounts it passed on to the TYS defendants as equivalent to the fees withheld from the defendants in *Verity* by the international telephone companies, but the comparison fails. The sums Universal paid over to TYS constituted payments to its *codefendants*. Thus those amounts are part and parcel of the unjust enrichment of the entire group. *Cf. FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1234 (11th Cir. 2014) (distinguishing *Verity* in part because "the third-party middlemen here [in *IAB*] . . . were parties to the suit"). To subtract

18

them is merely to contest joint and several liability; once again, we have already decided that question.[9]

## IV. CONCLUSION

For the reasons stated above, the district court did not abuse its discretion in holding Universal jointly and severally liable with the members of the TYS scheme.

**AFFIRMED.**

---

[9] *Verity* is distinguishable for the additional reason that a defendant cannot deduct business expenses from the measure of unjust enrichment. *Wash. Data Res.*, 704 F.3d at 1327 ("[D]efendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts." (quotation omitted)). In *Verity*, the fees withheld by the telephone companies could not constitute unjust enrichment because they never entered the possession of the defendants. *Verity*, 443 F.3d at 67–68. By contrast, the defendants could not have deducted their rent, for example, from the amount of their unjust enrichment, because net revenue, not profit, is the correct measure of unjust gain. *Wash. Data Res.*, 704 F.3d at 1327 ("We agree with our sister circuits and today hold that the amount of revenue (gross receipts minus refunds), rather than the amount of profit (net revenue minus expenses), is the correct measure of unjust gains under section 13(b).").