Timothy C. Batten, Sr., United States District Judge
This case comes before the Court on the following Defendants' motions:
• Mark Ward's motion [133] to dismiss;
• Earl Robinson's motion [138] to dismiss;
• EDP Parties' motion [134] to dismiss and second motion [137] for the Court to take judicial notice;
*1285 • iStream Parties' motion [136] to dismiss; and
• Patricia Robinson's, as Executor of the estate of Jerry L. Robinson, motion [171] to dismiss.
I. Background
The following are the facts relevant to the pending motions to dismiss. In its first amended complaint [128], the Federal Trade Commission alleges violations of various statutes over which it has enforcement jurisdiction. The FTC has organized the parties into three groups:[1]
1. EDP Parties -EDebitPay, LLC; Platinum Online Group, LLC d/b/a Premier Membership Clubs; and clickXchange Media (corporate entities together, the "EDP Entities"). Also included are individual Defendants Dale Paul Cleveland and William R. Wilson.[2]
2. Hornbeam Parties -Hornbeam Special Situations, LLC; Cardinal Points Holdings, LLC; Cardinal Points Management, LLC d/b/a Clear Compass Digital Croup; and Gyroscope Management Holdings, LLC (corporate entities together, the "Hornbeam Entities"). In addition are individual Defendants Patricia Robinson, as Executor for the estate of Jerry L. Robinson, Earl G. Robinson, Mark Ward,[3] and James McCarter.
3. iStream Parties[4] -iStream Financial Services, Inc., along with Kris Axberg and Richard Joachim.
The long-story-short version of the FTC's 625-paragraph first amended complaint is as follows. The FTC alleges that as far back as 2010, the EDP Parties targeted subprime customers for enrollment in their discount-club offerings. They obtained customer data, including financial information, through loan applications and other lead-generation apparatus. They would then use this information, purporting to sign consumers up for discount clubs, to debit consumers' accounts without their authorization. These unauthorized, recurring debits were made through electronic checking mechanisms, and resulted in numerous returned checks due to bank concerns about the legitimacy of the transactions' authorizations.
After being sued previously by the FTC and private plaintiffs for unfair and deceptive practices, the EDP Parties wound down their businesses and sold assets to the Hornbeam Entities in 2013. The FTC alleges that the Hornbeam Entities continued the unfair and deceptive scheme after the asset purchase. The alleged role of the iStream Parties in the scheme stems from their role as the financial-transaction processor-namely, the unauthorized debits from consumer accounts.
The Court does not delve into further detail here, though where helpful the facts as alleged in the first amended complaint are interwoven throughout the Court's analysis of the motions. Based on the alleged unauthorized debit scheme, the FTC alleges that Defendants have violated Section *1286 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8401 et seq. The parties have made a number of motions to dismiss all or part of the FTC's first amended complaint [128].
II. Legal Standard
Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Chaparro v. Carnival Corp. , 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Chandler v. Sec'y of Fla. Dep't of Transp. , 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting id. ). The Supreme Court has explained this standard as follows:
A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.
Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (citation omitted) (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ); see also Resnick v. AvMed, Inc. , 693 F.3d 1317, 1324-25 (11th Cir. 2012).
Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level ...." Twombly , 550 U.S. at 555-56, 127 S.Ct. 1955 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." Id. at 555, 127 S.Ct. 1955 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas , 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.
Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
III. Discussion
In this Order, the Court addresses a number of motions and arguments related to certain Defendants' attempts to dismiss this case pursuant to Rule 12(b)(6). The Court groups the analysis by argument and Defendant, and rules as follows.[5]
A. Rule 9(b) Does Not Apply
The EDP Parties contend that because the FTC's claims "sound in fraud," [134-1] at 1, the heightened pleading standard of Rule 9(b) applies. There is a split of authority over whether a claim under § 45(a) requires Rule 9(b)'s heightened *1287 pleading standard. See FTC v. HES Merch. Servs. Co. , No. 6:12-cv-1618-Orl-22KRS, 2014 WL 12611275, at *2 (M.D. Fla. Feb. 20, 2014) (noting split between the Tenth Circuit and a district court in California's Central District). This Court joins those courts holding that Rule 9(b) does not apply to FTC actions under 15 U.S.C. § 45(a).
The Court begins with the rule itself, which provides that when a party is "alleging fraud or mistake, [it] must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The EDP Parties do not argue that the FTC is alleging fraud outright; they argue only that the FTC's claims sound in fraud.
This argument rests on the proposition that if a claim is near enough to fraud, or fraud-like, Rule 9(b) applies. They cite no controlling authority for this proposition. Nor was the Court made aware of a controlling standard by which to determine whether a claim sounds in fraud, and therefore triggers Rule 9(b).
In any event, a claim under the FTC Act is not like fraud, even though it may involve some level of deceit.[6] As the Tenth Circuit noted:
A § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b), and ... treat[ing] it as such unduly hinder[s] the FTC's ability to present its case. Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation.
FTC v. Freecom Commc'ns, Inc. , 401 F.3d 1192, 1203 n.7 (10th Cir. 2005). Similarly, when compared to the elements of fraud under Georgia law, fraud requires proof of scienter, reliance, and injury, but these are not required for a violation of the FTC Act. See, e.g. , Engelman v. Kessler , 340 Ga.App. 239, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017) ("In order to prove fraud, the plaintiff must establish five elements: (1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff, and (5) damage to plaintiff." (quoting Sun Nurseries, Inc. v. Lake Erma, LLC , 316 Ga.App. 832, 730 S.E.2d 556, 561 (Ga. Ct. App. 2012) ) ).
Contrasting the elements of fraud with the elements of an FTC Act claim, the difference is palpable and warrants a conclusion that Rule 9(b) does not apply. See FTC v. Tashman , 318 F.3d 1273, 1277 (11th Cir. 2003) ("To establish liability under section 5 of the FTCA, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances[;] and (3) the representation was material.").
Accordingly, the Court rejects the EDP Parties' claims that Rule 9(b) applies. As the Court addresses the remaining arguments for dismissals, it will apply only the pleading standard under Rule 8.
B. Failure to State a Claim Upon Which Relief May Be Granted Under Rule 8
1. The First Amended Complaint States a Claim Against Ward
Ward moves to dismiss the first amended complaint for failure to state a claim. The FTC avers that Ward-by and through the Hornbeam Entities-violated § 5(a) of the FTC Act, 15 U.S.C. § 45(a), *1288 which, inter alia, prohibits "unfair or deceptive acts or practices in or affecting commerce," and ROSCA, 15 U.S.C. § 8401 et seq. Ward argues that the FTC's complaint fails to state a claim because it inadequately alleges his role in the Hornbeam Entities' unlawful scheme.
First, the Court addresses Ward's argument that the claims against him are impermissibly lumped together with the claims regarding the Hornbeam Entities. The general rule in this circuit in multi-defendant pleadings, which has not been officially abrogated or overturned, is that "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." Crowe v. Coleman , 113 F.3d 1536, 1539 (11th Cir. 1997). Ward argues that this is no longer good law because this case was decided prior to the pleading standard announced in Iqbal.
The Court is unwilling to draw this conclusion absent clear guidance from the Eleventh Circuit regarding its as-of-now good case law. The Eleventh Circuit has applied Crowe in the post- Iqbal era, indicating at least a tacit support for its viability. See, e.g., Crespo v. Coldwell Banker Mortg. , 599 Fed.Appx. 868, 872 (11th Cir. 2014) (quoting Crowe ); Jackson v. Bank of Am., N.A. , 578 Fed.Appx. 856, 860 (11th Cir. 2014) (citing Crowe ). Accordingly, as a general rule, each allegation in the first amended complaint is to be considered as if it is made against each Defendant.
Even so, in this case, the FTC's first amended complaint has well-satisfied the requirements of Iqbal. As an initial matter, Ward does not appear to challenge that the FTC has plausibly alleged its counts as to the Hornbeam Entities. Rather, he focuses only on the FTC's allegations as they relate to him, specifically, whether the FTC has plausibly alleged his individual liability for the Hornbeam Entities' putative malfeasance. After reviewing the arguments and briefs, the Court concludes that the FTC has plausibly alleged Ward's liability in the first amended complaint.
After establishing (or, as here, assuming) that the FTC has demonstrated a violation by the corporate entity, to show individual liability the FTC must prove (1) that "the individual defendant[ ] participated directly in the practices or acts or had authority to control them" and (2) that "the individual had some knowledge of the practices." FTC v. Gem Merch. Corp. , 87 F.3d 466, 470 (11th Cir. 1996) (quoting FTC v. Amy Travel Serv. Inc. , 875 F.2d 564, 573 (7th Cir. 1989) ).[7]
"Authority to control ... may be established by 'active involvement in business affairs and the making of corporate policy' and by evidence that 'the individual had some knowledge of the practices.' " FTC v. IAB Mktg. Assocs., LP , 746 F.3d 1228, 1233 (11th Cir. 2014) (quoting Amy Travel Serv. Inc. , 875 F.2d at 573 ). Knowledge may be proven by showing that the defendant "had actual knowledge of the deceptive conduct, was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning [ ] the truth." FTC v. Primary Grp., Inc. , 713 Fed.Appx. 805, 807 (11th Cir. 2017) (quoting FTC v. Ross , 743 F.3d 886, 892 (4th Cir. 2014) ); see also FTC v. Nat'l Urological Grp. , 645 F.Supp.2d 1167, 1207 (N.D. Ga. 2008).
Under the facts alleged in the first amended complaint,[8] Ward's active involvement *1289 in the business affairs of the Hornbeam Entities is clear from his role as president, a top-level company policymaker; he is also alleged to have possessed financial authority. The first amended complaint is replete with examples of Ward's investment and involvement in the day-to-day activities of the Hornbeam Entities, which includes the allegedly unlawful scheme related to the discount clubs. His knowledge is alleged based on the "daily, weekly, and monthly reports on all aspects of the business," [128] ¶ 200, and regular communication at all levels of Hornbeam's operations.
At this stage, the first amended complaint is more than sufficient to make it plausible that Ward was culpably involved in the Hornbeam Entities' allegedly unlawful scheme.
2. The Complaint States a Claim Against Earl Robinson
Like Ward, Earl does not dispute that the first amended complaint plausibly states a claim against the Hornbeam Entities. He too argues that the FTC has failed to demonstrate his individual responsibility for those violations. The Court disagrees.
The standard is the same as that discussed above with respect to Ward. Earl had authority at the Hornbeam Entities; he is alleged to have been an owner of the Hornbeam parent company, Hornbeam Special Situations. Earl is also alleged to have served on the management committee, which included day-to-day operations, as well as serving as the chief revenue officer. In these capacities, Earl was involved and received reports regarding all aspects of the business, had authority on a policymaking level, and was aware of the importance of subprime consumers' recurring monthly charges to the Hornbeam Entities' revenue stream. He was also aware of the past history of lawsuits related to unauthorized charges.
This is only a sampling of Earl's involvement in the Hornbeam Entities' allegedly unlawful enterprise, and makes it plausible that Earl could be held individually liable for the Hornbeam Entities' wrongdoing.[9]
3. The Complaint States a Claim Against Patricia Robinson, in Her Capacity as Executor of the Estate of Jerry Robinson
Patricia Robinson, in her capacity as Executor of the estate of Jerry Robinson ("Jerry" or "the estate"), also argues that the FTC has failed to adequately allege Jerry's individual liability for the Hornbeam Entities' wrongdoing. Once again, the Court applies the same standard as above and finds that the FTC has adequately pleaded its claims.
The first amended complaint alleges that Jerry was an owner of the Hornbeam Special Situations parent company, and possessed the largest ownership share of the Hornbeam Entities. He was on and served as the chairman for the management committee, which exercised control over the company and day-to-day operations; he also served as the chief strategy officer and had financial authority. These positions make it plausible that he had policymaking authority. He received reports and information about operations and was aware of the importance and role of subprime consumers to revenues. Moreover, he was specifically made aware of the risk of high returns of electronic checks *1290 when Hornbeam bought the business. These are just a handful of the myriad allegations contained in the FTC's first amended complaint, which thoroughly sets forth the facts making it plausible that Jerry is liable for the corporate violations of the Hornbeam Entities.
4. The Complaint States a Claim Against the EDP Parties
The EDP Parties make a brief footnote argument that the FTC has not satisfied Rule 8's pleading standards, see [134-1] at 13 n.3, but do not elaborate further. This is insufficient argumentation for the Court to engage this issue. Moreover, the Court is satisfied that the FTC has adequately alleged the unlawful scheme as set forth in its response in opposition. See [152] at 9-10; see also id. at 10 n.5.
C. Res Judicata
Various parties have argued that all or part of the FTC's claims are barred by the doctrine of res judicata. The Eleventh Circuit has summed up the analysis for when res judicata applies so as to preclude a party from bringing a claim as follows:
Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing religitation of matters that were litigated or could have been litigated in an earlier suit. In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits[,] and (4) the same cause of action must be involved in both cases.
I.A. Durbin, Inc. v. Jefferson Nat'l Bank , 793 F.2d 1541, 1549 (11th Cir. 1986) (citations omitted). Using this standard, the parties' arguments are addressed in turn.
1. Res Judicata Based on a Prior Suit Between the FTC and the EDP Parties
The EDP Parties argue that res judicata bars this action. Addressing this argument requires some brief background. In 2007, the FTC brought an enforcement action against, inter alia, EDebitPay, LLC, Wilson, and Cleveland in the Central District of California for violations of the FTC Act. See FTC v. EDebitPay, LLC , No. 2:07-cv-04880 (C.D. Cal. filed July 30, 2007). The complaint at that time was based on the manner in which the EDP Parties marketed prepaid debit cards, which included unauthorized debiting of consumer accounts, nondisclosure of material facts, and misrepresentations regarding fees owed. The Central District of California entered a stipulated final injunction from the 2007 action, and in 2010 entertained contempt proceedings against the defendants, which resulted in a 2011 contempt order against them for violation of the 2007 order.
The misconduct at issue in the 2007 case is very similar to that alleged here, except now the FTC complains about different EDebitPay products and, more importantly, violations during a time period subsequent to the conclusion of the prior actions.
The parties do not disagree that the first three elements of res judicata are met here. Rather, the dispute is as to whether this case and the 2007 case (and 2010 contempt action) are the same cause of action.
In the Eleventh Circuit, "[t]he principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." "It is now said, in *1291 general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."
Ragsdale v. Rubbermaid, Inc. , 193 F.3d 1235, 1239 (11th Cir. 1999) (citation omitted) (alteration in original) (first quoting Citibank, N.A. v. Data Lease Fin. Corp. , 904 F.2d 1498, 1503 (11th Cir. 1990), and then quoting id. ).
Additionally, res judicata does not bar claims arising after the original litigation was commenced. As the Eleventh Circuit has put it:
[W]e do not believe that the res judicata preclusion of claims that "could have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action.
Manning v. City of Auburn , 953 F.2d 1355, 1360 (11th Cir. 1992) (footnote omitted). Thus, there are two categories of claims that are precluded by res judicata based on previous litigation: those claims that could have been brought in the original pleading of the original litigation and claims that were actually brought in supplemental or later proceedings in the same action.
Here, the FTC has conceded that it is not seeking relief based on any violations that occurred during the 2007 case or the 2010 contempt action. Nor is it seeking relief for any of the claims it actually brought in the 2010 contempt proceedings.[10] See [152] at 11 ("The current complaint alleges violations that occurred afterwards from July 2010 to June 2016."); [128] ¶ 594 ("In numerous instances from July 2010 through September 2013, the EDP Defendants ...."); id. ¶ 597 (same). Because the claims presently before the Court accrued after the 2007 action, or were not asserted during the 2010 contempt proceedings, res judicata does not bar their litigation here.
2. Res Judicata Based on a Prior Class Action Between the EDP Parties and Private Litigants
The Court again begins this section with some brief background. In 2011, the EDP Parties were subject to two class actions that were later consolidated in the Central District of California, White v. EDebitPay, LLC , No. 2:11-cv-6738, 2011 WL 9198903 (C.D. Cal. filed Aug. 16, 2011), and Deffenbaugh v. EDebitPay, LLC , No. 4:11-cv-3024, 2011 WL 2447429 (N.D. Cal. filed June 20, 2011). For convenience and consistent with the parties' submissions, these are together referred to as the " White actions" or " White . " These class actions were based on alleged debiting of consumer accounts without authorization. It eventually resulted in a settlement and release by all class members. The FTC, though not a party, objected to the settlement on the grounds that the compensation exchanged for the release was not fair to the class members. The district court overruled the objection and approved the settlement.
The EDP Parties now contend that the instant action by the FTC is at least partially precluded by the classwide settlement. They limit this argument to the *1292 monetary relief sought by the FTC as it relates to the alleged consumer injury, which they argue was redressed in the White actions. The FTC responds that it is not in privity with the White class because it is asserting independent federal-law-enforcement interests, which the class and its representatives did not adequately represent.
The EDP Parties rely on California v. IntelliGender, LLC , 771 F.3d 1169 (9th Cir. 2014), for the proposition that when the Government, through its agent the FTC, seeks relief that is wholly duplicative of the claims of a prior class-based action and the FTC is seeking monetary compensation on behalf of injured persons in the class, res judicata bars the Government's action. Put concretely, in a consumer fraud suit by the Government, the suit will be barred if there has been a prior class action based on the same alleged misconduct with respect to the same consumer class.
The Court, however, agrees with the FTC that to the extent Intelligender would require barring the FTC's suit here, it conflicts with controlling precedent in this circuit. Herman v. South Carolina National Bank , 140 F.3d 1413 (11th Cir. 1998), concluded that a lawsuit brought by the Secretary of Labor was not barred by res judicata, notwithstanding a prior ERISA class action based on the same alleged misconduct.
The Court applies Herman here to determine whether the present lawsuit concerns the same parties or their privies as those in White . "[A] nonparty to a prior decision cannot be bound by it unless he had sufficient identity of interest with a party that his interests are deemed to have been litigated." Herman , 140 F.3d at 1424 (quoting In re Birmingham Reverse Discrimination Emp't Lit. , 833 F.2d 1492, 1498 (11th Cir. 1987) ). The Court finds that the FTC's action here is analogous to the Secretary's ERISA enforcement in Herman , and that res judicata "does not apply here because the [FTC] was not a party to the [ White ] settlement and has national public interests separate and distinct from those of the [ White ] private litigants." Id.
Like the Secretary's action in Herman , the FTC is bringing an action that, while based on the same or similar misconduct by the Defendants, seeks to enforce its own independent interests in the FTC Act's enforcement. Moreover, as the FTC argues, the White plaintiffs did not adequately represent, nor were they charged with representing, the broader national interests in law enforcement and fair dealing in the marketplace, which have been entrusted by Congress to the FTC. The White plaintiffs had their own, private interests when they released the EDP Parties from their claims, and these potentially ran counter to the FTC's broader interest in deterrence, full recompense, and enforcement of the law.
While not raised by the parties, the Court notes that Herman also contemplates that the statutory regime under which the Government seeks redress could affect the res judicata outcome. Here, the Court has not been made aware of anything in the statutory regime of the FTC Act (or ROSCA) that indicates that the FTC is not permitted to redress its own interests separate and apart from those litigated in White .[11]
*1293 Accordingly, the Court holds that the FTC was not in privity with the White plaintiffs and therefore res judicata does not apply to bar this action.
3. Res Judicata and Collateral Estoppel for Individual Defendant Patricia Robinson, as Executor of the Estate of Jerry Robinson
The estate of Jerry Robinson also argues that this action is barred by res judicata, as well as collateral estoppel. Jerry was an owner of the Hornbeam Entities before he passed away. He had various roles within the companies, and the FTC alleges that by virtue of these roles he is personally liable for the misconduct alleged against the Hornbeam Entities in the first amended complaint. The estate now claims that Jerry was in privity with the EDP Defendants in the earlier FTC action against them, and therefore the current case against his estate is barred by res judicata and collateral estoppel.
This argument fails for a few reasons. First, as the Court has already held, even if Jerry was in privity with the EDP Parties, their res judicata claim fails. This holding would apply equally to one of their privies. As stated above, the FTC is also asserting violations predicated upon different conduct, later in time, and which the FTC did not argue in the contempt proceedings (a continuation of already-ongoing proceedings). The violations alleged herein did not exist at the time the complaint was filed in the original FTC action. Therefore, this action is not barred.[12]
Lastly, collateral estoppel does not apply because the issues in this case are not "identical to the one[s] involved in the prior litigation ...." CSX Transp., Inc. v. Bhd. of Maint. of Way Emps. , 327 F.3d 1309, 1317 (11th Cir. 2003) (quoting I.A. Durbin, Inc. , 793 F.2d at 1549 ). The instant claims involve a different set of products and violations related to those products at a different time. Moreover, the issues were not "actually litigated in the prior" contempt proceeding, which the estate admits by arguing that the issues should have been raised at that time. Id.
D. Statutes of Limitations
Certain parties have argued that various statutes of limitations bar all or part of the FTC's claims. The Court takes each of these arguments in turn.
1. ROSCA Statute of Limitations
The parties dispute which statute of limitations should apply to the FTC's ROSCA claim. The EDP Parties contend that 28 U.S.C. § 1658, a broadly applicable federal statute of limitations, applies a four-year statute of limitations, which would bar claims accruing prior to August 2013. The FTC counters by arguing that there is no applicable statute of limitations because the ROSCA claim is to be treated as an equitable claim brought under 15 U.S.C. § 53(b). The Court agrees.
This is a fairly straightforward statutory interpretation question requiring little analysis. Section 1658 applies to civil actions, unless "otherwise provided by law ...." As the FTC points out, the law has otherwise provided a statute of limitations.
Under 15 U.S.C. § 8404(a), a violation of that
*1294 chapter or any regulation prescribed under this chapter shall be treated as a violation of a rule under section 18 of the [FTC Act, 15 U.S.C. § 57a,] regarding unfair or deceptive acts or practices. The [FTC] shall enforce this chapter in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC Act, 15 U.S.C. § 41 et seq. , ] were incorporated into and made a part of this chapter.
In other words, courts are to treat a ROSCA claim by the FTC as an FTC Act claim. And doing so means that if the FTC brings this claim under § 53(b), it may bring it "whenever it has reason to believe that a violation has occurred." FTC v. Ivy Capital, Inc. , No. 2:11-cv-283-JCM (GWF), 2011 WL 2470584, at *2 (D. Nev. June 20, 2011) (emphasis added) (citing 15 U.S.C. § 53(b) ). Therefore, the Court holds that no statute of limitations applies to bar the FTC's ROSCA claim. Accord FTC v. CompuCredit Corp. , No. 1:08-cv-1976-BBM-RGV, 2008 WL 8762850, at *12 (N.D. Ga. Oct. 8, 2008).
2. Section 57b Statute of Limitations
The EDP Parties raise an additional statute of limitations argument in their reply brief. Even though this was a new argument, the Court allowed it after providing the FTC an opportunity to file a surreply. This new argument is that the FTC brings its complaint solely under 15 U.S.C. § 57b, which is governed by a three-year statute of limitations. The EDP Parties argue that in order for the FTC to bring an action under its purported statutory grounds- 15 U.S.C. § 53(b) -it must show that the EDP Parties "[are] violating, or [are] about to violate" a provision of law under the FTC's jurisdiction. Id. § 53(b)(1). The EDP Parties argue that because they are no longer carrying on with the offending conduct, and EDebitPay has sold its assets, they are not violating or about to violate anything.
But this ignores the rest of the statute, which provides that the FTC may seek equitable relief "[w]henever the [FTC] has reason to believe " that a violation is taking or is about to take place. 15 U.S.C. § 53(b)(1) (emphasis added). The Court interprets this provision as an expression of the FTC's prosecutorial discretion when it comes to bringing a case under § 53(b).
As another court in the Eleventh Circuit has put it:
[ Section 53(b) ] allows the FTC to bring suit if it has "reason to believe" that a violation of the Act is occurring or about to occur and it believes that the proceeding will be in the "public interest." These provisions do not furnish the court with a meaningful standard by which to measure the lawfulness of FTC's actions. In the absence of standards by which the court is to measure the FTC's actions, review is impossible ....
FTC v. Nat'l Urological Grp. , No. 1:04-cv-3294-CAP, 2006 WL 8431977, at *3 (N.D. Ga. Jan. 9, 2006). This Court agrees. Whether the FTC has reason to believe that a violation is taking or is about to take place is committed to agency discretion, and therefore, unreviewable.
This requires the Court to defer to the agency's determination of whether it has reason to believe that the EDP Parties are violating or could be violating the FTC Act. There is no meaningful standard by which the Court can review the FTC's belief in this regard. Accordingly, the Court defers to the FTC's belief that the parties are violating or will violate the FTC Act, and this action is properly brought under § 53(b). Section 57b's statute of limitations accordingly does not bar any part of this action.
*1295 3. Disgorgement Statute of Limitations
The iStream Parties argue that the FTC's disgorgement remedy is partially time-barred under Kokesh v. SEC , --- U.S. ----, 137 S.Ct. 1635, 198 L.Ed.2d 86 (2017).[13] In Kokesh , the Supreme Court determined that the statute of limitations contained in 28 U.S.C. § 2462[14] applies to disgorgement actions brought by the SEC. The iStream Defendants now seek to extend Kokesh to apply § 2462 to the instant disgorgement action sought by the FTC. The question turns on whether the disgorgement remedy sought by the FTC in the instant action constitutes a "penalty" within the meaning of § 2462.
To answer this, the Court asks the same questions asked in Kokesh. First, is the disgorgement brought as a consequence of the violation of a public law? Second, is the disgorgement claim brought for punitive purposes, which also involves the corollary question, is the remedy sought punitive? The Court concludes that, as the FTC has urged, this question is not amenable to disposition at the motion to dismiss stage.
First, there appears to be no dispute that the FTC's current action is brought in consequence of an alleged violation of public law(s)-the FTC Act and ROSCA. But it is the next one that causes the trouble. At this time, it is not clear to the Court what exactly the nature and purpose of the FTC's disgorgement claims are. For example, it is not clear what will happen to the disgorged funds. Will they return to injured consumers, and therefore be compensatory? Or will they be placed into the U.S. Treasury, indicating that the purposes is actually to punish?
In fact, disgorgement is not per se penal, see United States v. Prochnow , No. 07-10273, 2007 WL 3082139, at *4 (11th Cir. Oct. 22, 2007) ("As we [have] explained ... disgorgement is not a punishment, it is a mechanism to rid the offender of ill-gotten gains." (citation omitted) ). Further development of the record is needed before the Court can make a determination about the applicability of § 2462 to this case because "[d]etermining whether proposed remedies are penalties subject to Section 2462 requires a 'fact-intensive inquiry.' " SEC v. Microtune, Inc. , 783 F.Supp.2d 867, 884 (N.D. Tex. 2011) (quoting SEC v. Alexander , 248 F.R.D. 108, 115 (E.D.N.Y. 2007) ). It is not clear from the "face of the complaint" that the statute of limitations should apply, and because this is an affirmative defense, it is inappropriate for disposition at the motion to dismiss stage. See La Grasta v. First Union Sec., Inc. , 358 F.3d 840, 845 (11th Cir. 2004) (quoting Omar ex rel. Cannon v. Lindsey , 334 F.3d 1246, 1251 (11th Cir. 2003) ).
*1296 Thus, the Court reserves a ruling and invites the parties to develop a record on this issue and present it again at a later stage of the proceedings.[15]
4. Telemarketing Sales Rule Statute of Limitations
The iStream Defendants also argue that Count VII of the first amended complaint, which alleges that the iStream Defendants "provided substantial assistance or support" to the telemarketing violations of the Hornbeam and EDP Parties, is partially time-barred. [128] ¶ 620. The iStream Defendants contend that to the extent these allegations are based on violations of the Telemarketing Sales Rule ("TSR"), the FTC is invoking 15 U.S.C. § 6105(b), which is subject to a three-year statute of limitations when brought pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b(d).
The FTC responds that it is not bringing this claim under Section 19, but rather under Section 13(b), 15 U.S.C. § 53(b). Therefore, it argues that § 57b's statute of limitations does not apply. The FTC's position is that the alleged violation of the TSR forms the basis of one of its unfair or deceptive practice allegations under 15 U.S.C. § 45(a).
Given these positions, the parties appear to be speaking past one another. iStream says the FTC is doing "X," which is wrong; the FTC responds, no, we are doing "Y," which is right, but does not explain to the Court what would happen if it were doing "X." Moreover, it is at least colorable that the FTC is doing "X"; that is, it is bringing a claim under § 57b and the TSR. While the FTC's brief in opposition is clear that it is seeking the equitable relief under § 53(b), the complaint is not so clear.
Given this ambiguity, the Court construes Count VII of the complaint as being brought pursuant to § 53(b), which is not subject to the statute of limitations in § 57b. It appears to the Court that the FTC intended to bring an equitable claim against the iStream Defendants pursuant to § 53(b) by, in Count VII, alleging that the iStream Defendants were involved in a deceptive act or practice, the contours of which are defined by the TSR. Therefore, this claim will remain as construed by the Court.
IV. Conclusion
For the foregoing reasons, the following motions to dismiss are denied:
• Mark Ward's motion [133] to dismiss;
• Earl Robinson's motion [138] to dismiss;
• EDP Parties' motion [134] to dismiss;
• iStream Parties' motion [136] to dismiss; and
• Patricia Robinson's, as Executor of the estate of Jerry L. Robinson, motion [171] to dismiss.
The Court grants the EDP Parties' second motion [137] for the Court to take judicial notice.
Ward, Earl Robinson, the EDP Parties, the iStream Parties, and Patricia Robinson are required to file their responsive pleadings within twenty-one days.
IT IS SO ORDERED this 16th day of April, 2018.

These are for organizational purposes only and reflect the usage of the parties in their briefing. The groupings do not reflect upon whether the Defendants are jointly or individually represented by counsel, presenting a common defense, or liable in common for the alleged violations.

Defendant Keith Merrill is also among the EDP Parties, but has been terminated after a settlement with the FTC. See [105].

Ward is excluded as to events taking place prior to January 2016.

Defendant Chet Andrews is also a party related to the iStream Defendants, but has filed an answer [135] to the first amended complaint.

As an initial matter, the Court grants the EDP Parties' motion [137] to take judicial notice, see Exhibits 1-2, "only for the limited purpose of recognizing the 'judicial act' that the [filing] represents or the subject matter of the litigation." United States v. Jones , 29 F.3d 1549, 1553 (11th Cir. 1994).

The EDP Parties also appear to argue that "deception claims" or "misrepresentations" also trigger Rule 9(b). But Rule 9(b)'s plain language limits its application to fraud or mistake. This argument is not squarely presented to the Court, and at this time, the Court rejects a conclusion that would read new language into the rule by adding new categories of claims that trigger Rule 9(b).

Because the Court finds that Ward had authority to control the Hornbeam Entities, it does not address whether Ward directly participated in the alleged violations.

As a general matter, the Court is ignoring any facts not alleged in the complaint or otherwise appropriate on a motion to dismiss that are asserted in Defendants' briefing and other filings.

Given the present allegations in the complaint, the Court believes it more appropriate for this case to proceed to discovery and will revisit the issue of how individual Defendants' roles in the various companies affect their liability, if at all, at summary judgment. See, e.g., FTC v. Chinery , No. 05-3460 (GEB), 2007 WL 1959270, at *7 (D.N.J. July 5, 2007).

This is the Court's understanding based on the pleadings, briefing, and oral argument. To the extent this is not the case, this is an issue appropriately addressed in a motion for summary judgment after further factual development of the actual claims and factual bases for those claims.

As the Eleventh Circuit noted in Herman , an example of such a distinct statutory regime that could lead to a different conclusion is that related to claims under Title VII and the ADEA, which requires filing an administrative charge with the EEOC prior to bringing suit. This reflects "Congress's intent to limit multiple suits." Herman , 140 F.3d at 1426 n.22. No such regime exists in actions under the FTC Act or ROSCA.

The Court is also persuaded by the FTC's arguments that the differing burdens of proof eliminate the application of res judicata and collateral estoppel. See Dowling v. United States , 493 U.S. 342, 349, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). The estate argues that the FTC should have brought these claims during the contempt proceedings, which requires proof by clear and convincing evidence. But this is an ordinary civil action, requiring proof by a preponderance of the evidence. This is an alternate ground for rejecting Jerry's res judicata and collateral estoppel argument.

The iStream Parties also argue that Kokesh requires dismissal of the disgorgement claim in its entirety because the FTC lacks the statutory authority for disgorgement. However, Kokesh specifically stated that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement ...." 137 S.Ct. at 1642 n.3. Accordingly, this Court is governed by clear Eleventh Circuit precedent that disgorgement is an appropriate remedy. See FTC v. WV Universal Mgmt. , 877 F.3d 1234, 1239 (11th Cir. 2017) ("Although [Section 13(b) of the FTC Act] does not expressly authorize courts to grant monetary equitable relief, this Court has held that 'the unqualified grant of statutory authority to issue an injunction under section 13(b) carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits.' " (quoting Gem Merch. Corp. , 87 F.3d at 468 ) ).

"Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued ...."

This is not a license to keep the pleadings murky. The Court expects the FTC to shape its request for equitable relief according to the needs of the case and the Government, and to make this known more clearly as soon as possible. Discovery will be useful to this end.